WILLIAM HANNAN *et al.*, Plaintiffs-Appellants, v. RICHARD F. WATT *et al.*, Defendants-Appellees.

First District (5th Division)   No. 86—1013

Opinion filed September 12, 1986.

Foran, Wiss & Schultz, of Chicago (James R. Figliulo and Christine S. McGoey, of counsel), for appellants.

Thomas P. Sullivan, Donald R. Harris, and Steven L. Brenneman, of Chicago (Jenner & Block, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs, both of whom are Republic Airlines (Republic) pilots, brought this action to enjoin the Chicago law firm of Cotton, Watt, Jones & King (Cotton Watt) from continuing to represent Northwest Orient Airlines (Northwest) pilots during the Airlines Pilots Association (ALPA) seniority list integration proceedings stemming from the merger of Northwest and Republic. Cotton Watt had formerly represented plaintiffs and other pilots, prior to their professional association with Republic, in similar seniority list integration proceedings and other matters allegedly related to their current representation of the Northwest pilots. Plaintiffs fear that such representation may lead to the disclosure of confidences reposed by them on Cotton Watt during the course of their previous attorney-client relationship and that

this information could be used against them during the present proceedings.

Following a hearing on plaintiffs' petition for injunctive relief, the trial court expressly found that while plaintiffs had shown that the former and present proceedings were similar in nature, they had failed to establish that the information communicated to Cotton Watt during their past dealings was substantially related to the current representation of Northwest pilots. Plaintiffs' petition for preliminary injunction was thereby denied and their complaint dismissed. On appeal, plaintiffs argue that (1) the trial court's finding was contrary to the manifest weight of the evidence and an abuse of discretion; and (2) the trial court applied an erroneous legal standard in determining whether a substantial relationship existed between the prior and current representations.

We affirm.

On February 14, 1986, Cotton Watt was retained by Northwest pilots to represent them in seniority list integration proceedings relating to the impending merger of Northwest and Republic Airlines. These proceedings have as their purpose to combine the Northwest and Republic pilots' seniority lists into a single list for the newly merged airline. Seniority ranking is considered extremely important in the evolution of a pilot's professional career since it directly affects such rights as amount of compensation, kind of aircraft flown, home base, and the position on the aircraft (*e.g.*, captain, first officer, etc.).

The integration process, governed by ALPA policy, requires the compilation and certification of certain specified employment data pertaining to the pilot groups. This information, which includes pilots' dates of hire, employment dates, seniority rankings, furlough times, and leaves of absences, is then exchanged between the pilot groups involved in the merger. Additional information regarding the companies' financial standing is extracted from preexisting public sources, such as the airlines' annual reports and filings with the Securities Exchange Commission, the Civil Aeronautics Board, or the Department of Transportation. All of the data necessary to integrate pilot seniority lists of merging airlines is therefore either publicly available or required by ALPA policy to be produced in the proceedings.

Having gathered all pertinent information, the parties next enter a period of negotiation, mediation, and, if necessary, arbitration to resolve any disputes concerning the method and manner of integrating the seniority lists. During this process, exhibits and other evidence may be presented by the respective attorneys in support of their proposals. In their submitted proposals the attorneys advocate the

method of integration that best serves their clients' interests, protects their expectations, and provides them with the most favorable seniority treatment. Since a direct correlation has been found to exist between an airlines' financial condition and its pilots' career expectations, the financial standing of the subject airlines typically provides the basis with which to determine the relative expectations of the respective pilot groups absent a merger. Based on this and other factors, each competing group thus attempts to persuade the arbitrator that their pilots' career expectations are higher than the expectations of pilots from the other merging airlines and that they should receive preferential ranking in the merged seniority list.

Once a merger is realized the new emerging company's financial standing and other data relevant to pilots' career expectations are certain to change dramatically. For this reason, any information in connection with an airlines' pilot seniority list resulting from a prior merger becomes inconsequential to the negotiations or arbitration process of a subsequent merger. The relevant financial history of an airline *vis-a-vis* its pilots' expectations, for purposes of these proceedings, therefore extends back only as far as the company in question has existed as an entity.

Republic Airlines came into existence as a result of two mergers. In early 1980, North Central Airlines and Southern Airways merged to form Republic. Thereafter, Republic acquired and merged with Air West. Air West was, in turn, the product of an earlier merger between Bonanza, West Coast, and Pacific Airlines.

Cotton Watt's professional relationship with plaintiffs, now Republic pilots, extends as far back at 1967. Plaintiff Lawlus was then a captain at Bonanza Airlines. That year, Bonanza pilots retained the law firm of Cotton Watt to represent them in seniority lists integration proceedings growing out of the merger of Bonanza Airlines, West Coast Airlines, and Pacific Airlines. As Lawlus was chairman of the Bonanza pilot merger committee, Cotton Watt worked closely with him and other pilots during the course of these proceedings. At that time, certain vital, though not confidential, information relating specifically to the three competing pilot groups was collected and analyzed for purposes of presenting it as evidence to the arbitrator. This information included financial data derived from such public sources as SEC filings, Civil Aeronautics Board traffic and financial statistics, newspapers, brokerage houses, and periodicals.

In 1972, Cotton Watt was retained by a group of Air West pilots to represent their interests and defend the 1968 arbitration award resulting from the Bonanza-West Coast-Pacific merger. The award was

being challenged by another group of Air West pilots who were displeased with the final outcome of the integrated pilot seniority list. All data presented and reviewed during the course of this representation was relevant only to the airlines involved in the 1968 merger.

Sometime in the mid-1970's, Air West became Hughes Air West. In 1979, while plaintiff Lawlus was an employee of that company, certain Hughes Air West pilots retained the services of Cotton Watt to investigate the possibility of acquiring company stock through an employee stock ownership plan. While the acquisition contemplated by the pilots never materialized, Cotton Watt was exposed to certain financial information relating to Hughes Air West during the course of their representation. All of this information, however, was not confidential as it derived from publicly available sources.

In 1979, plaintiff Hannan was a pilot with North Central Airlines. Cotton Watt, who had been on retainer with that company since 1970, was called upon at that time to represent North Central pilots in the integration proceedings in connection with the merger between North Central and Southern Airways. Hannan served as merger representative for the North Central pilots. During the arbitration process evidence was presented on the relative financial strength of the companies, the pilots' comparative check-out times and other matters concerning the career expectations of the respective pilots absent a merger. All this information was gathered from various public sources and exchanged between the parties during the proceedings.

In 1985, plaintiff Lawlus contacted Cotton Watt to inquire about certain aspects of the termination of Republic pilots' retirement plan. Cotton Watt complied with this request for information by sending Lawlus a letter delineating his rights as a plan beneficiary. The firm also advised Lawlus that, in the event he was interested in pursuing a claim relating to the termination, it would not be able to represent him. No further services were thereafter performed.

On January 23, 1986, Northwest and Republic announced plans to merge their respective companies. Cotton Watt was retained by the Northwest pilots to represent them both in the proceedings conducted by ALPA to integrate the pilot seniority lists and in the proceedings conducted by the Department of Transportation to consider the airlines' application for permission to merge. The current seniority list for Republic pilots, which will be relevant during the subject integration proceedings, was the product of the 1980 merger of Hughes Air West into Republic. Cotton Watt did not represent any of the parties involved in that merger.

OPINION

The sole question presented us on appeal is whether the trial court abused its discretion in denying plaintiffs their petition for preliminary injunction. It is well established that a trial court has broad discretionary powers to grant or deny a request for injunctive relief. (*Roche Brothers v. Garrigan* (1980), 88 Ill. App. 3d 107, 410 N.E.2d 338.) A reviewing court will therefore simply look to whether the trial judge correctly exercised his broad powers and overturn his ruling only where there has been a manifest abuse of discretion. (*Motorcycle Swap Meet, Inc. v. Abate Inc.* (1979), 72 Ill. App. 3d 778, 391 N.E.2d 414.) Because a preliminary injunction is considered to be an extraordinary remedy (see *In re Marriage of Sherwin* (1984), 123 Ill. App. 3d 748, 463 N.E.2d 755), courts are apt to use it sparingly, with due restraint, and only where the circumstances of the case clearly require it (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 475 N.E.2d 1077).

Plaintiffs in the instant case seek to disqualify counsel for the Northwest pilots on the grounds that Cotton Watt possesses certain valuable information gathered during previous representations which, if used against them, could adversely affect their bargaining position in the current proceedings. A party seeking injunctive relief must show that: (1) he possesses a clearly ascertainable right which needs protection; (2) he will suffer irreparable harm if the injunction is not granted; (3) there is no adequate remedy at law for his injury; and (4) he is likely to succeed on the merits of the case. *In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 475 N.E.2d 1077.

A review of the instant record reveals that plaintiffs failed to prove that they possess a clear ascertainable right which needs protection. Canons 4 and 9 of the Code of Professional Responsibility (87 Ill. 2d Rules 4—101, 9—101, 9—102), which plaintiffs claim have been violated by Cotton Watt's representation of Northwest pilots, do not, by their own terms, create independent rights of action. Plaintiffs' failure to base their petition for injunctive relief on an underlying substantive cause of action thus lends support to defendants' view that this case is nothing more than an action to disqualify Cotton Watt from partaking in the current proceedings.

Both Federal and State courts have viewed with disapproval a litigant's attempt to disqualify opposing counsel as a tactical weapon in litigation for fear that such action can be misused for purposes of harassment. Not surprisingly, a disqualification is regarded as a drastic measure which courts should approach with continence and grant only as a last resort. (*Freeman v. Chicago Musical Instrument Co.*

(7th Cir. 1982), 689 F.2d 715.) It is also looked upon as a vehicle that serves to destroy the attorney-client relationship by effectively preventing a party from freely retaining his counsel of choice. See *In re Marriage of Thornton* (1985), 138 Ill. App. 3d 906, 486 N.E.2d 1288.

We agree with defendants that a potential for abuse exists in the instant case. There are, according to defendants, only four law firms in the country possessing the expertise needed to represent pilots in airline merger cases. Plaintiffs have informed the Northwest pilots that they not only object to their present choice of Cotton Watt as legal counsel, but that a selection of the third law firm would also be opposed by them because it previously represented Southern pilots in other matters. The proposed disqualification is therefore a clear attempt by plaintiffs to either select counsel for the Northwest pilots (by virtue of leaving them only the choice of hiring the fourth remaining law firm), or force the Northwest pilots to engage counsel without experience.

■ ■ The record further reveals that plaintiffs failed to satisfy their burden of proving that they will be irreparably harmed if Cotton Watt is not enjoined from representing Northwest pilots. In order to succeed in a action for preliminary injunction the party seeking relief must demonstrate that the threatened injury to him will be immediate, certain, and substantial if the injunction is denied, while the loss or inconvenience to his opponent will be comparatively small and insignificant if it is granted. (*McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420.) Plaintiffs here merely testify in general terms that prejudice would result from the denial of their motion because Cotton Watt possesses certain confidential information obtained during their prior representations of Bonanza, Air West, and North Central pilots which might be used against them in the current proceedings. Plaintiffs, however, neither identify the purported confidential information with any degree of specificity nor make a credible showing that the information relating to previous mergers of other airlines would be of probative value to the present merger of Republic and Northwest. Indeed, a brief review of the evidence relied on by plaintiffs readily shows that Cotton Watt's prior representations, including those involving Lawlus and Hannan as merger representatives for Bonanza and North Central respectively, are not substantially related to the current representation of the Northwest pilots.

Plaintiffs first claim that the financial history and strength of Republic might be relevant to the present integration proceedings. They argue that since the previous representations provided Cotton Watt

with crucial information relating to Republic Airlines, they now have a valuable composite picture of Republic's financial standing which can be used to their clients' advantage. We find this argument to be faulty not only because it erroneously assumes that Cotton Watt's involvement in mergers of airlines that preceded Republic amounts to a representation of Republic pilots *per se,* but also because it ignores the very fundamental fact that Republic did not even exist as an entity at the time Cotton Watt was exposed to the alleged relevant and confidential financial information.

The record is quite clear that Republic pilots were not parties to the earlier proceedings relied on by plaintiffs. Rather, those proceedings involved the representation of pilots of the now-defunct Bonanza and North Central Airlines. Contrary to plaintiffs' assertions, the fact that some former Bonanza and North Central pilots are presently flying for Republic Airlines has no bearing upon this finding. As noted previously, once a merger is consummated the financial status, as well as the pilots' career expectations of the airlines involved, is irrevocably altered. The issues addressed in the 1968 Bonanza-West Coast-Pacific merger and the 1979 North Central-Southern merger involved data peculiar only to those companies. Thus, information regarding the financial history and strength of Bonanza and North Central Airlines in the 1960's and 1970's, respectively, while pertinent to the previous mergers, cannot be deemed relevant to the present-day financial standing of Republic or its pilots. We also note that the seniority lists resulting from the 1968 Bonanza-West Coast-Pacific merger or the 1979 North Central-Southern merger will not be the subject matter of the current proceedings. The focus of the subject negotiations will instead be on the present Republic pilot seniority list. This list was compiled as a result of the 1980 merger of Hughes Air West into Republic, a merger in which Cotton Watt represented neither pilot group. Finally, while it is true that the financial history of a company cannot be solely determined by examining that company's performance at an isolated point in time, we fail to see how the financial condition of individual entities which preceded the formation of Republic can be of any relevance to said determination. Unlike the 1968 and 1979 mergers, where the existence of Bonanza and North Central as independent entities for decades prior to the mergers made the review of those airlines' financial history for an extended period of years a necessity, Republic's short existence makes an extensive historical survey of the company's financial development an impossibility. The relevant financial history of Republic can only extend back as far as the company itself has existed as an entity.

■ Plaintiffs next argue in favor of disqualifying defendants as counsel for Northwest on the basis that the previous representations of Bonanza and North Central pilots provided Cotton Watt with information concerning the check-out rates of Republic pilots (*i.e.*, the rate at which pilots advance), data which, they claim, might be relevant and would be used to undermine their seniority ranking in the current proceedings. By stating that this data "might be relevant," plaintiffs argue a possibility and not a certainty. Moreover, even if check-out rates do become an issue during the subject negotiations, it is the information relating exclusively to Republic and Northwest pilots in the 1980's, and not the check-out rates of North Central and Bonanza pilots in the 1960's and 1970's, that will be germane to the integration process. Finally, although the data on check-out rates need not be exchanged between the pilot groups unless they choose to do so, it is one which can be readily obtained from public sources.

We find equally untenable plaintiffs' contention that disqualification is warranted in the instant case on the ground that the information examined during the previous proceedings relating to the pilots' geographic domicile preferences, personal leave time, salary, and benefits might be relevant to the proposed merger. Aside from the fact that a pilot's domicile preference is not determinate of his work schedule since the latter is constrained by the airlines' domicile rather than by the individual pilot's choice of residence, plaintiffs simply offer no evidence demonstrating that Cotton Watt's prior representations are relevant to their current representation of the Northwest pilots. A party seeking the disqualification of counsel bears the burden of proving that present and prior representations are substantially related. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (5th Cir. 1981), 646 F.2d 1020, *cert. denied* (1981), 454 U.S. 895, 70 L. Ed. 2d 211, 102 S. Ct. 394.

The substantial-relationship test has been used by Illinois courts as a means to protect litigants against the misuse of confidential information reposed on their attorneys during the course of a prior representation. (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073.) A court applying the substantial-relationship test must carefully examine the factual context of both the previous and current representations to determine whether disqualification is required. (*INA Underwriters Insurance Co. v. Nalibotsky* (E.D. Pa. 1984), 594 F. Supp. 1199.) After hearing plaintiffs' evidence and applying the aforesaid principles to the particular facts of the instant case, the trial court concluded that no substantial relationship existed between Cotton Watt's previous

representations of Bonanza and North Central pilots and the pending Republic-Northwest merger. We find no reason to disturb the lower court's finding.

In concluding thus, we distinguish this court's holdings in *Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 470 N.E.2d 21, and *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073. In *Weglarz* we held that, since the attorney sought to be disqualified not only helped set up the very business entities which were being challenged in the subsequent representation but also had represented both the plaintiff and defendant jointly in establishing the entities, the subsequent action attacking those entities was substantially related to the prior representation. Similarly, in *La Salle National Bank* we concluded that the disqualification of counsel was warranted where the issues and clients were identical in the two adverse representations. Because the factual circumstances surrounding those cases are readily distinguishable from those involving the instant matter, they cannot be relied upon as authority to support a finding favoring the disqualification of Cotton Watt.

In order for disqualification to be warranted, plaintiffs needed to demonstrate precisely how the subject matters of the prior representations are connected with the matters of the pending merger. Plaintiffs, however, instead showed only a similarity in the types of proceedings involving the previous and current mergers. A mere similarity in types of proceedings does not establish a substantial relationship. (*INA Underwriters Insurance Co. v. Nalibotsky* (E.D. Pa. 1984), 594 F. Supp. 1199.) Having failed to establish that any of the previous representations are substantially related to the instant case, plaintiffs did not prove a likelihood of success on the merits. Accordingly, the trial court was correct in denying plaintiffs their petition for preliminary injunction.

The ruling of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J, and MURRAY, J., concur.