FIFTH DIVISION

September 11, 1998

                                                         

No. 1-97-0837

HASCO, INC., a West Virginia Corporation, )

and HAROLD A. SNEDDON, )

)

Plaintiffs-Appellees, )       Appeal from

)    the Circuit Court

v. )     of Cook County.

)

MICHAEL B. ROCHE, L. ANDREW BREHM, and )

SCHUYLER, ROCHE AND ZWIRNER, )

)

Defendants-Appellants )     No. 96-CH-11982

)

(Arauca Trading Limited Partnership, an )

Illinois Limited Partnership; Arauca         )

General, Inc., an Illinois Corporation; )

Stephen G. Macklem; Henry Gosiene; Brent )        Honorable

Harrison; New Allegheny, Inc.; First Options )    Michael B. Getty,

of Chicago, Inc.; and National Association )     Judge Presiding.

of Securities Dealers, Inc., )

)

Defendants). )

JUSTICE THEIS delivered the opinion of the court:

Appellants, Michael B. Roche, L. Andrew Brehm and Schuyler, Roche & Zwirner (SRZ) (collectively the Schuyler parties), appeal from the circuit court's permanent injunction order disqualifying SRZ from representing certain clients in an arbitration proceeding before the National Association of Securities Dealers, Inc. (NASD).  The clients, Arauca Trading Limited Partnership (ATLP), Arauca General, Inc. (AGI), Stephen G. Macklem and Dr. Henry Gosiene (collectively the Arauca parties), initially were parties to the appeal but voluntarily 

withdrew on July 11, 1997.
(footnote: 1)[fn1]  Appellees, Hasco, Inc., and Harold A. Sneddon (Hasco/Sneddon),
(footnote: 2)[fn2] filed a motion to dismiss the appeal based on mootness and appellants' alleged lack of standing.  First Options of Chicago, Inc. (FOC), filed a motion in support of the appellees' motion to dismiss the appeal.  Although named as a defendant in the underlying suit, NASD filed no brief in this appeal.  For the reasons that follow, we affirm the order of the circuit court.

To provide context for this appeal from the circuit court's permanent injunction order disqualifying counsel, we outline the four distinct and underlying disputes between the parties:  (1) the initial "FOC Dispute"; (2) the later FOC "Settlement Allocation Dispute"; (3) the related "Settlement Amendment Dispute"; and finally (4) the "Disqualification Dispute."

The FOC Dispute

In August 1994, ATLP, an Illinois limited partnership engaged in trading equities and options on the Chicago Board Options Exchange, Inc. (CBOE), and AGI, an Illinois corporation and the sole general partner of ATLP, retained the law firm of Schuyler, Roche & Zwirner to represent them in a dispute with ATLP's clearing broker, FOC.  SRZ represented ATLP, AGI, and Macklem in a series of actions against FOC including an arbitration before the CBOE, 
First Options Chicago, Inc. v. Arauca Trading Limited Partnership, Arauca General, Inc., and Stephen G. Macklem
, case No. 94-M-08; an arbitration before the NASD, 
Arauca Trading Limited Partnership and Stephen G. Macklem v. First Options of Chicago, Inc., et al.
, case No. 94-03861; and a civil action in the chancery division of the circuit court of Cook County to determine the appropriate situs of the arbitration, 
First Options of Chicago, Inc. v. Arauca Trading Limited Partnership, Arauca General, Inc., and Stephen G. Macklem
, case No. 94-CH-8402, 
aff'd
, 
No. 1-95-

0170
 (1996) (unpublished summary order under Supreme Court Rule 23).  The parties do not dispute that during these initial maneuvers, Harold A. Sneddon and Macklem were acting as agents for ATLP and AGI.

In late 1994, the subordinated lenders to Arauca,
(footnote: 3)[fn3] namely, Macklem, Gosiene, Harrison, Hasco, Inc., and New Allegheny, Inc., filed a civil action in the circuit court of Kanawha County, West Virginia, against FOC.  
New Allegheny, Inc., Hasco, Inc., Dr. Henry Gosiene, Dr. Brent Harrison and Stephen G. Macklem v. First Options of Chicago, Inc.
, case No. 94-C-2212.  Pursuant to a letter agreement dated November 23, 1994 (retention letter), the subordinated lenders agreed to retain SRZ and the law firm of Campbell, Woods, Bagley, Emerson, McNear & Herndon (Campbell Woods) to represent the subordinated lenders in that suit.  The retention letter included a paragraph regarding waiver of conflict of interest "associated with the representation by SRZ of Arauca and the representation of Clients by SRZ with respect to their claims against FOC." 

In June 1995, the Arauca parties began negotiations with FOC in an attempt to settle the underlying dispute as well as the various outstanding litigations.  Sneddon, Macklem, an accountant, two attorneys from Campbell Woods, and Michael Roche from SRZ all traveled to New York for the negotiations.  Sneddon was one of the chief negotiators for the Arauca parties.  Although Roche did not participate in the actual settlement negotiations with FOC, he did participate in discussions regarding allocation of the settlement proceeds.

Substantial agreement was reached on June 14, but a written settlement and release agreement (FOC Settlement Agreement) was not executed until August 11, 1995.  The FOC Settlement Agreement required FOC to pay a specified settlement amount to ATLP and set forth the terms of the clearing relationship between ATLP and FOC.  FOC issued a check for the specified amount payable to "ARAUCA TRADING LIMITED PARTNERSHIP AND SCHUYLER, ROCHE AND ZWIRNER C/O SCHUYLER, ROCHE AND ZWIRNER."   

The FOC Settlement Allocation Dispute

On August 17, 1995, SRZ wired the settlement proceeds to ATLP's West Virginia bank account.  A dispute arose between Hasco, Inc., and the remaining Arauca parties regarding allocation of the FOC settlement funds and, specifically, payment of the attorney fees.  Attempts to settle the dispute failed.  In February 1996, Hasco filed a civil action in West Virginia to recover its loan to Arauca, 
Hasco, Inc., et al. v. Arauca Trading Limited Partnership, et al.
, No. 96-C-

342.

The Settlement Amendment Dispute

In the meantime, ATLP sought to resume its trading activities with FOC.  In early 1996, the Arauca parties and FOC agreed to an amendment to the FOC Settlement Agreement concerning the financial structure of the settlement.  FOC believed that the Securities Exchange Act of 1934 (15 U.S.C. §§78g, 78h (1994)) and Regulation T promulgated thereunder required FOC to obtain signatures from all of the subordinated lenders.  Because Hasco/Sneddon refused to sign the amendment as requested by FOC, FOC refused to resume clearing trades for ATLP.

On July 3, 1996, invoking paragraph 24 of the FOC Settlement Agreement, First Options filed a statement of claim with the NASD pursuant to the NASD Code of Arbitration Procedure to determine its rights and liabilities under the FOC Settlement Agreement, 
First Options of Chicago, Inc. v. Arauca Trading Limited Partnership, Arauca General, Inc., Stephen G. Macklem, Dr. Henry Gosiene, Dr. Brent Harrison, New Allegheny, Inc. and Hasco, Inc.
, case No. 96-02855  (NASD arbitration).  SRZ entered an appearance on behalf of the Arauca parties, filed an answer to FOC's arbitration claim, and filed a cross-claim against Hasco and a third-party claim against Sneddon.  

The NASD Disqualification Dispute

In August 1996, Hasco/Sneddon filed a statement for declaratory relief in the NASD arbitration, asking that SRZ be disqualified from representing the Arauca parties in the NASD arbitration against Hasco/Sneddon.  The NASD arbitration panel declined to rule on the issue and instructed Hasco/Sneddon to seek relief elsewhere.  Hasco/Sneddon then filed motions to disqualify SRZ in other lawsuits pending against the Arauca parties, but the NASD panel refused to stay the arbitration proceedings, pending resolution of those disqualification motions.

On November 1, 1996, in the circuit court of Cook County, Hasco/Sneddon filed a motion for temporary restraining order, which the court granted, enjoining the NASD arbitration pending a preliminary injunction hearing.  The Arauca and Schuyler parties filed a petition in the appellate court for review and vacatur of the circuit court's temporary restraining order, which the appellate court denied.

Also on November 1, Hasco/Sneddon filed a verified complaint for declaratory judgment and preliminary and permanent injunctive relief seeking to disqualify SRZ from representing the Arauca parties in the NASD arbitration and enjoining the Arauca parties from proceeding in the NASD arbitration as long as SRZ remained their counsel.  
Hasco, Inc., and Harold A. Sneddon v. Arauca Trading Limited Partnership, Arauca General, Inc., Stephen A Macklem, Henry Gosiene, Brent Harrison, New Allegheny, Inc., First Options Chicago, Inc., Schuyler, Roche and Zwirner, Michael R. Roche and L. Andrew Brehm, and National Association of Securities Dealers, Inc.
, case No. 96-CH-11982.  From the record, no motion was filed to strike the Schuyler parties' designation as party defendants.  Later, the circuit court conducted an evidentiary hearing on the merits for permanent injunctive relief.

On January 29, 1997, after three days of testimony and exhibits, the circuit court ordered SRZ disqualified from representing the Arauca parties in the NASD arbitration and permanently enjoined the Arauca parties from proceeding in the NASD arbitration as long as they were represented by SRZ.  On February 27, 1997, the Arauca (ATLP, AGI, Macklem, and Gosiene) and Schuyler (SRZ, Roche, and Brehm) parties filed a notice of appeal from the circuit court's January 29, 1997, permanent injunction order pursuant to Supreme Court Rule 303.  134 Ill. 2d R. 303.  Appellees filed a motion to dismiss the appeal and renewed that motion after the Arauca parties voluntarily withdrew from the appeal on July 11, 1997.

As a threshold matter, we consider this court's jurisdiction over the instant appeal.  
Hwang v. Tyler
, 253 Ill. App. 3d 43, 45, 625 N.E.2d 243, 245 (1993).  Historically, an order disqualifying counsel was neither an 
immediately appealable interlocutory order nor a final and appealable order until a final judgment had been entered on the underlying merits of the case.  
In re Estate of French
, 
166 Ill. 2d 95, 651 N.E.2d 1125 (1995), 
reaffirming
 
Almon v. American Carloading Corp.
, 380 Ill. 2d 524, 44 N.E.2d 592 (1942).  In 1996, however, the Illinois Supreme Court amended Supreme Court Rule 306 to allow for permissive appeals of orders granting motions to disqualify counsel.  166 Ill. 2d R. 306(a)(7) (amended eff. March 26, 1996).  Rule 306(a)(7) recognizes that disqualification of counsel orders, while collateral to the merits of a given proceeding, nevertheless implicates the right of a litigant to counsel of his or her own choice (
In re Estate of French
, 166 Ill. 2d at 105, 651 N.E.2d at 1130-31 (Freeman, J., dissenting)), and the concomitant interest of a prior client in preventing the attorney's subsequent and adverse representation of another.  
Schwartz v. Cortelloni
, 177 Ill. 2d 166, 173, 685 N.E.2d 871, 875 (1997); 
Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.
, 116 Ill. App. 3d 1043, 1058, 452 N.E.2d 804, 814 (1983).  Thus, Rule 306(a)(7) allows for permissive interlocutory appeal of disqualification orders which typically arise during pending court proceedings.

In this case, however, the disqualification issue was brought before the circuit court in a proceeding separate from the underlying NASD arbitration.  From the record, there seemed to be no disagreement in having the circuit court decide the disqualification issue, which was collateral to the arbitration.  See 
Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
, 181 Ill. 2d 373, 382, 692 N.E.2d 1167, 1171-72 (1998).  The verified complaint for declaratory and injunctive relief named the Arauca parties, FOC, SRZ, Roche, Brehm, and the NASD as defendants.  Count I sought a declaratory judgment:  (a) declaring SRZ unable to act as counsel for Arauca or any other party adverse to Hasco/Sneddon arising out of the FOC dispute and specifically in the matter before the NASD; (b) enjoining the Arauca parties and SRZ from proceeding in the NASD arbitration so long as SRZ remained counsel for Arauca; and (c) disqualifying SRZ from acting as counsel in the NASD proceeding.  Count II sought to enjoin all defendants from proceeding in the NASD arbitration for so long as SRZ remained counsel for the Arauca parties or any other party adverse to Hasco/Sneddon.  

After a full evidentiary hearing on the merits and briefing by the parties, the circuit court entered a written memorandum of opinion which held:

"Accordingly, the law firm of Schuyler, Roche & Zwirner is disqualified from representing the Arauca defendants in the NASD proceeding, and the Arauca defendants are permanently enjoined from proceeding in the matter before the NASD so long as they are represented by the law firm of Schuyler, Roche & Zwirner." 

Noting the procedural distinction of this appeal as compared to other disqualification orders, we confirm that the Arauca and Schuyler parties filed a timely notice of appeal from the final permanent injunction order, pursuant to Supreme Court Rule 303.  134 Ill. 2d R. 303; 
American Institute of Real Estate Appraisers of the National Ass'n of Realtors v. National Real Estate Ass'n
, 191 Ill. App. 3d 867, 869, 548 N.E.2d 379, 381 (1989).  Thus, the circuit court's permanent injunction order constitutes a final and appealable order over which we have jurisdiction.

The next issue for our consideration is whether the Schuyler parties have standing to pursue this appeal.  Hasco/Sneddon argues that, once the Arauca parties withdrew from the appeal, the Schuyler parties no longer retained a sufficiently appealable interest in the case.  Given the unique facts of this case, we disagree.  While the "right to representation" runs to the litigant (
Almon v. American Carloading Corp.
, 380 Ill. 524, 530, 44 N.E.2d 592, 595 (1942);         
Transamerica Insurance Co. v. Vassilos
, 181 Ill. App. 3d 939, 941, 537 N.E.2d 848, 850 (1989) (citing 
Almon
); 
French
, 166 Ill. 2d at 105-06, 651 N.E.2d at 1130-31 (Freeman, J., dissenting)), the Schuyler parties' designation as "parties of record" in the injunctive proceeding confers upon them an interest in the potentially binding effect of the findings of the circuit court as set forth in the memorandum of opinion.  155 Ill. 2d R. 301; 
Vece v. De Biase
, 31 Ill. 2d 542, 544-45, 202 N.E.2d 482, 483 (1964).  In finding that these attorneys have standing to pursue this appeal, however, we stress the unique procedural stance of this case:  (1) Hasco/Sneddon's filing of a verified complaint for declaratory and injunctive relief in the circuit court; (2) the Schuyler parties' designation as defendants "of record" in that proceeding; and (3) entry by the circuit court of a final and appealable permanent injunction order disqualifying SRZ from representing the Arauca parties in the NASD arbitration.  Consequently, even though the Arauca parties chose to voluntarily withdraw from the appeal, the Schuyler parties, named as defendants by Hasco/Sneddon, retained an appealable interest in the propriety of the circuit court's disqualification order.  

As an aside, we disagree with Hasco/Sneddon's contention that the appeal is rendered moot because of the Arauca parties' voluntary withdrawal from the appeal and their indication through affidavits in later court proceedings that they would not rehire SRZ to represent them in the event of a reversal of the circuit court's disqualification order.  We believe the issue of the propriety of the disqualification remains outstanding and, given the unique procedural posture of the case, the Schuyler parties are entitled as "parties of record" to appellate review of the circuit court's decision.  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 8, 688 N.E.2d 106, 109 (1997).  Thus, the motions to dismiss taken with the case are denied.

We proceed to review the propriety of the circuit court's permanent injunction order disqualifying SRZ from representing the Arauca parties and, further, enjoining the Arauca parties from proceeding with the NASD arbitration as long as they were represented by SRZ.  As the court's permanent injunction order granting disqualification concerned pure questions of fact, our standard of review is whether the court's decision is contrary to the manifest weight of the evidence.  
Harper v. Missouri Pacific R.R. Co.
, 282 Ill. App. 3d 19, 25, 667 N.E.2d 1382, 1386 (1996).

A party seeking permanent injunctive relief must demonstrate:  (1) a clear and ascertainable right in need of protection; (2) irreparable harm if injunctive relief is not granted; (3) no adequate remedy at law; and (4) success on the merits.  
R.L. Polk & Co. v. Ryan
, 296 Ill. App. 3d 132, 142, 694 N.E.2d 1027, 1034 (1998)
; see 
Postma v. Jack Brown Buick, Inc.
, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 204 (1993).  The circuit court determined, and we agree, that Hasco/Sneddon demonstrated a protectible interest in, irreparable harm from, and an inadequate legal remedy for SRZ's potential representation of interests adverse to Hasco/Sneddon.  See 
Hannan v. Watt
, 147 Ill. App. 3d 456, 497 N.E.2d 1307 (1986) (also considering disqualification in the injunction context).  As to the merits, Hasco/Sneddon was required to show that SRZ's representation of the Arauca parties in the NASD proceeding would violate Rule 1.9 of the Illinois Rules of Professional Conduct.  134 Ill. 2d R. 1.9.

Although without guidance by our supreme court's recent opinion in 
Schwartz v. Cortelloni
, 177 Ill. 2d 166, 685 N.E.2d 871 (1997), the circuit court nevertheless conducted the proper analysis in determining whether SRZ's representation of the Arauca parties in the NASD proceeding would violate Rule 1.9 of the Illinois Rules of Professional Conduct.  Rule 1.9 of the Illinois Rules of Professional Conduct provides:

"(a) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or

(2) use information relating to the representation to the disadvantage of the former client, unless:

(A) such use is permitted by Rule 1.6; or

(B) the information has become generally known."  134 Ill. 2d R. 1.9.

The party seeking to disqualify the attorney, the former client, has to prove:  (1) the prior attorney-client relationship; and (2) that the matters involved in the prior representation and the attorney's present representation of the opposing party are substantially related.  
Schwartz
, 177 Ill. 2d at 174, 177-78, 685 N.E.2d at 875, 877.

To determine whether the two representations are substantially related, our supreme court has adopted the three-part inquiry announced in 
LaSalle National Bank v. County of Lake
, 703 F.2d 252, 255-56 (7th Cir. 1983).  Thus, the trial court must determine:  (1) the scope of the former representation; (2) whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) whether the information is relevant to the issues raised in the litigation pending against the former client.  
LaSalle
, 703 F.2d at 255-56; 
Schwartz
, 177 Ill. 2d at 180, 685 N.E.2d at 878.  
These are factual inquiries vested in the discretion of the circuit court.  
Schwartz
, 177 Ill. 2d at 178, 179, 685 N.E.2d at 878, 879.

In the evidentiary hearing before the circuit court, Hasco/Sneddon called Michael Roche, Harold Sneddon, Andrew Brehm, and David Barclay, general counsel of FOC, to testify.  The Arauca parties called Michael Roche, Stephen Macklem, and Andrew Brehm.  Both parties agreed that SRZ provided parallel representation to the Arauca parties while representing the subordinated lenders, including Hasco, in the West Virginia lawsuit.  The parties disagreed, however, regarding SRZ's later representation of Hasco and also Sneddon.  Andrew Brehm and Michael Roche testified that they considered Sneddon to be at all times an agent of Arauca.  Brehm further testified that SRZ's representation of Hasco ended as of August 11, 1995, the date the FOC settlement was executed and the settlement check disbursed.  Roche testified, however, that SRZ never sent a letter to Hasco/Sneddon to confirm SRZ's withdrawal.  In contrast, Sneddon testified that he believed SRZ to represent Hasco after the settlement agreement with FOC.  Moreover, Sneddon presented David Barclay, general counsel of FOC, who testified that FOC had no reason to believe that SRZ was not negotiating the FOC Settlement Amendment on behalf of all the Arauca parties.

As to representation of Sneddon personally, Roche conceded that SRZ briefly represented Sneddon regarding a subpoena served upon Sneddon during the CBOE arbitration.  Moreover, Sneddon testified regarding his formation of another entity, APCO limited partnership, which was to provide an alternative trading vehicle for Sneddon while ATLP was debilitated by the disputes.  Hasco/Sneddon introduced a complaint filed in the circuit court in which SRZ sued Sneddon for breach of contract to recover its fees associated with the formation of APCO.  Roche acknowledged that SRZ filed suit against Sneddon personally for breach of contract for fees associated with the formation of APCO.     

There was more than ample evidence before the circuit court to support Hasco/Sneddon's contention that SRZ had represented both Hasco and Sneddon, individually.  We agree with the circuit court's determination that "[w]hile SRZ originally may have represented Sneddon only in his capacity as an agent of Arauca, the evidence is clear that the representation expanded to include Hasco, and therefore its `alter ego' Sneddon, as a subordinated lender" and, further, that SRZ represented Sneddon in an individual capacity.  Moreover, these representations of Hasco and Sneddon all revolved around the FOC dispute.

    The next inquiry is "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters."  
Schwartz
, 177 Ill. 2d at 178, 685 N.E.2d at 877, citing 
LaSalle
, 703 F.2d at 256).  Citing a federal decision from the second circuit, 
Allegaert v. Perot
, 565 F.2d 246 (2d Cir. 1977), the Schuyler parties vigorously contend that SRZ's joint representation of the Arauca parties and Hasco/Sneddon, by definition, indicates that Hasco/Sneddon could impart no confidential information to SRZ.  We disagree.  

First, the joint representations did not fully overlap.  SRZ represented Sneddon individually and the contours of SRZ's representation of Hasco were less than precise.  Moreover, joint representation alone is not decisive of whether confidences were imparted by Hasco/Sneddon to SRZ.  T
he circuit court correctly found the 
Allegaert
 decision inapplicable as it does not take into account the duty of loyalty inherent in Rule 1.9.  According to 
Schwartz
, the issue is whether SRZ's representation of Hasco and Sneddon invites an inference that SRZ "necessarily obtained confidential information [about the FOC Dispute] which would be relevant to the present litigation."  
Schwartz
, 177 Ill. 2d at 181, 685 N.E.2d at 878.  We think such an inference is invited.

In prior Illinois cases, either the nature or the duration of the representations established that confidential information could not have been imparted.  For example, in 
Schwartz
, the court found that due to the 40-year lapse between representations and the dissimilarity of subject matters, no confidential information could have been imparted.  
Schwartz
, 177 Ill. 2d at 182, 685 N.E.2d at 879.  Likewise, when the subject information of the prior representation is outdated, the courts have found no relevant confidential information.  
First National Bank v. St. Charles National Bank
, 152 Ill. App. 3d 923, 932, 504 N.E.2d 1257, 1264 (1987); 
Hannan v. Watt
, 147 Ill. App. 3d 456, 463, 497 N.E.2d 1307, 1312 (1986).
  

In this case, 
both the nature and scope of the two matters are inextricably tied.  The prior representations involved FOC on the one side, and the Arauca parties and Hasco/Sneddon, in various capacities, on the other side.  The present dispute concerns mutations of the same issues and parties, but realigned.  See 
La Salle National Bank v. Triumvera Homeowners Ass'n
, 109 Ill. App. 3d 654, 665, 440 N.E.2d 1073, 1081 (1982).  Roche confirmed that he held telephone conversations with Sneddon to which no other Arauca parties were privy.  The question is not whether actual confidences were disclosed; the question is whether such confidences could be revealed, whether intentionally or inadvertently.  
La Salle
, 109 Ill. App. 3d at 664, 440 N.E.2d at 1080.  The circuit court correctly determined that the nature and scope of SRZ's representation of Hasco and Sneddon were so intertwined with the later representation of the Arauca parties to raise the inference that SRZ necessarily was privy to confidential information from Hasco/Sneddon regarding the FOC settlement.  

Thus, the last inquiry regarding whether the confidential information would be relevant to the present representation has also been answered.  
Schwartz
, 177 Ill. 2d at 178, 685 N.E.2d at 877.  Because the present matter evolved from and is actually a mutation of the initial FOC dispute requiring the prior representation, the initial FOC dispute is part and parcel of the NASD arbitration.  Moreover, as the circuit court noted, in the arbitration proceeding, the Arauca parties filed a cross-claim against Hasco and a third-party claim against Sneddon, seeking both compensatory damages and $1 million in punitive damages.

As a final matter, we agree with the circuit court's determination that the waiver signed by Hasco, Inc., as contained in the retention letter, constituted a limited waiver regarding conflicts arising from SRZ's representation of the subordinated lenders in the West Virginia lawsuit.  The waiver provision of the retention letter stated:

"6. 
Waiver of Conflict of Interest.
 Each of Clients, as a subordinated lender to Arauca, has a claim against Arauca arising from any default by Arauca in repayment of the subordinated debt.  Clients have been advised by Arauca that Arauca presently lacks sufficient resources to repay the subordinated debt.  SRZ is presently representing Arauca in its pursuit of claims against FOC to recover lost profits on the Syntex transaction and for other relief.  SRZ is also furnishing other legal advice to Arauca and its general partner, Arauca General, Inc. (`AGI').  A conflict exists between the interests of Arauca, AGI and each of the Clients.  By executing this letter-agreement, each of the Clients hereby consents to waive any conflict of interest associated with the representation by SRZ of Arauca and the representation of Clients by SRZ with respect to their claims against FOC.  Each Client further recognizes and acknowledges that SRZ shall have no obligation to advise any Client with respect to any actual or potential claim against Arauca."

Although the Schuyler parties argue that this waiver extends to the NASD arbitration dispute, the circuit court correctly determined that this conflict waiver was limited to SRZ's representation of the subordinated lenders in the West Virginia lawsuit.

As testified to by Roche, the conflict waiver contained in the executed retention letter was a recognition that, at the time the West Virginia suit was filed against FOC, Arauca was already in default to its subordinated lenders.  Thus, while the waiver referred to claims by the subordinated lenders "against FOC" and "against Arauca," the waiver did not address SRZ's representation of Arauca regarding Arauca and FOC claims against the subordinated lenders and, specifically, Hasco, Inc.  Although Roche testified that the purpose of the waiver "was to waive all future conflicts of any nature," the circuit court correctly found that such a broad intention was not contained in the language of the waiver.  The waiver certainly did not address SRZ's representation of Sneddon individually or the subsequent issues raised by the global settlement.  We agree with the circuit court that the conflict waiver was a limited one, written and understood to apply only to the West Virginia lawsuit brought by the subordinated lenders against FOC.

Based on the foregoing, we find that the circuit court did not err in its determination that SRZ's representation of the Arauca parties in the NASD arbitration proceedings would constitute a violation of Rule 1.9 of the Illinois Rules of Professional Conduct.  134 Ill. 2d R. 1.9.  The circuit court's permanent injunction order was proper.

Affirmed.

HARTMAN and HOURIHANE, JJ., concur.

[fn1]     
Two other clients, Dr. Brent Harrison and New Allegheny, Inc.,  did not participate in the appeal.  When discussing the facts of the underlying case, the six clients will be referred to collectively as the "Arauca parties."

[fn2]     
To simplify an already complicated text, where possible, we adopt the appellees' collective reference of Hasco/Sneddon.

[fn3]      
It is unclear from the record whether the subordinated loans were made to ATLP or AGI.  There are references to each in the record.   

FOOTNOTES
1:     
Two other clients, Dr. Brent Harrison and New Allegheny, Inc.,  did not participate in the appeal.  When discussing the facts of the underlying case, the six clients will be referred to collectively as the "Arauca parties."

2:     
To simplify an already complicated text, where possible, we adopt the appellees' collective reference of Hasco/Sneddon.

3:     
It is unclear from the record whether the subordinated loans were made to ATLP or AGI.  There are references to each in the record.