Matthew A. **WELCH**, d/b/a Jakmaw Associates, Plaintiff,

v.

Kevin A. **PAICOS**, individually, and in his official capacity as Town Administrator of the Town of Easton, the Town of Easton, Jeffrey Tufts, Patricia Hunt, William Hardin, Fred Clark, and Daniel Churchill, individually, Defendants.

Civil Action No. 96–12316–WAG.

United States District Court, D. Massachusetts.

Oct. 22, 1998.

Jeffrey S. Robbins, Timothy J. Langella, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, Michael Avery, Perkins, Smith & Cohen, Boston, MA, for Matthew A. Welch.

Charles B. Straus, III, Joseph M. Hamilton, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, Thomas Drechsler, William L. O'Brien, Finneran & Byrne, Dorchester, MA, for Kevin E. Paicos, Town of Easton.

William L. O'Brien, Finneran & Byrne, Dorchester, MA, Frank A. Smith, III, Frank A. Smith III & Associates, PC, Boston, MA, for Jeffrey Tufts.

William L. O'Brien, Finneran & Byrne, Dorchester, MA, for Patricia Hunt, William Hardin, David Churchil.

William L. O'Brien, Finneran & Byrne, Dorchester, MA, Samuel Perkins, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Fred Clark.

### MEMORANDUM OF DECISION

GARRITY, Senior District Judge.

Agreement by the affected parties has turned a live issue into a dormant one. When co-defendants parted company, their joint attorney asked the Court to determine whether he should withdraw, raising by implication an issue of first impression under the new Massachusetts Rules of Professional Conduct, Rule 3:07 of the Supreme Judicial Court, 426 Mass. 1301, 1303–1434 (1997) ("Massachusetts Rules"). While we considered this question, defendants reached an agreement, and asked us to defer our deci-

sion until after ruling on summary judgment. Because proper consent would remove the alleged conflict, and because we find consent here proper, we agree with defendants' request and grant their motion.

## I. BACKGROUND

This civil rights action arises from a real-estate development in the Town of Easton, Massachusetts. The litigation has been protracted and contentious; we recount only those events relevant to the matter at hand.

On November 20, 1996, plaintiff Matthew A. Welch, d/b/a Jakmaw Associates ("Welch"), filed suit in this Court. Plaintiff's original complaint named defendants Kevin E. Paicos ("Paicos"), Town Administrator of Easton, as well as the Town of Easton itself. Welch sought injunctive relief against Paicos in his official capacity, and damages from him individually. Attorney Thomas Drechsler, of Finneran, Byrne, Drechsler & O'Brien ("Finneran Byrne"), appeared for defendants.

Plaintiff moved to amend his complaint on March 14, 1998. Over defendants' opposition, we granted this motion on April 29, 1998. The amended complaint added current and former Easton selectmen as defendants, suing them as individuals for damages. They were Jeffrey Tufts, Patricia Hunt, William Hardin, Daniel Churchill, and Fred Clark ("Clark"). On July 2, all defendants filed a joint answer, signed by attorney William L. O'Brien ("O'Brien"), also of Finneran Byrne.

The defense did not stay united for long. It soon emerged that Clark, though a defendant in the case, sympathized with plaintiff and distanced himself from his co-defendants. Clark sought separate counsel as well, and attorney Samuel Perkins ("Perkins") appeared for him on August 4. On August 10, O'Brien moved to withdraw from representing Clark; we granted the motion.

On August 18, plaintiff's counsel deposed defendant Clark. When O'Brien, as counsel for other defendants, indicated he would cross-examine, Clark protested, arguing that his former attorney's participation would violate Rule 1.9 of the Massachusetts Rules ("Rule 1.9"). After failing to reach agreement with Clark's new counsel Perkins, O'Brien and his firm moved for court determination of whether the situation posed an irreparable conflict of interest under Rule 1.9, and, if we found such a conflict, for leave to withdraw.[1] After oral argument, we took the matter under advisement.

While we were considering this motion, defendants jointly filed their now-pending Motion to Enlarge Time for Filing Opposition, Further Memorandum of Law and Hearing on Motion for Determination of Conflict of Interest ("Motion to Defer"). This motion asked us to defer briefing, hearing, consideration, and ruling on the Motion for Determination of Conflict until after deciding any motions for summary judgment.

Plaintiff did not reply to either of these motions. At the hearing on this issue, plaintiff's attorney said he would work with new counsel if necessary, but did not comment on the merits of the issue.

Counsels' motions and memoranda deal only with the practicalities of the situation. Regrettably, they say nothing about the technical, procedural rules involved. Nevertheless, we shall refer to them in explaining our ruling.

## II. THE RULES

The ink is still wet on the Massachusetts Rules, which went into effect on January 1, 1998. See 426 Mass. at 1301–1302. Following the trend in most states, the Rules are based on the American Bar Association's Model Rules of Professional Conduct ("Model Rules"). See Adoption of Erica, 426 Mass. 55, 61 n. 7, 686 N.E.2d 967 (1997). The Massachusetts Rules replaced the old Canons of Ethics ("Canons") and their Disciplinary Rules ("DRs"), 382 Mass. 698, 768–797 (1980). The Canons were based on the ABA Model Code of Professional Responsibility,

---

**1.** See Mot. for Determination of Conflict of Interest and, if Appropriate, to Withdraw ("Motion for Determination of Conflict"). While we refer primarily to attorney O'Brien, his conflicts are imputed to his firm. See Rule 1.10 of the Massachusetts Rules, 426 Mass. at 1346–1352. If O'Brien goes, so goes Finneran Byrne. See id.

which predated the Model Rules. *See Erica*, 426 Mass. at 58–59, 686 N.E.2d 967.

■ Though O'Brien's involvement in the case predates the new Rules, his representation of Clark does not. The Massachusetts Rules therefore apply to any conflicts involving Clark.[2]

In Massachusetts, Rule 1.9 is something new under the sun. It combines elements of two Canons: DR 4–101, concerning client confidentiality, and DR 5–105, regarding simultaneous representation. *See* 426 Mass. at 1346. Rule 1.9 amalgamates these rules, arriving at a more comprehensive regulation of conflicts of interest between current and former clients. It states in pertinent part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

. . . .

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter, unless the former client consents after consultation:

(1) use confidential information relating to the representation to the disadvantage of the former client, to the lawyer's advantage, or to the advantage of a third person, except as Rule 1.6, Rule 3.3, or Rule 4.1 would permit or require with respect to that client; or

(2) reveal confidential information relating to the representation except as Rule

1.6 or Rule 3.3 would permit or require with respect to a client.

*Rules of the Supreme Judicial Court*, 426 Mass. 1301, 1342–43 (1997).[3] Rule 1.9 departs from the Canons by explicitly addressing conflicts of interest arising from subsequent representations, regardless of whether confidential information is involved. *See Adoption of Erica*, 426 Mass. 55, 58–60, 686 N.E.2d 967 (1997). By combining confidentiality concerns with other types of conflicts, Rule 1.9 moves questions of subsequent representation under one regulatory umbrella. If O'Brien's participation passes muster under Rule 1.9, we can be confident that it is permissible under the Massachusetts–Rules.

■ Rule 1.9 gives us no discretion to defer, sua sponte, consideration of possible conflicts. Since adverse representation by a conflicted lawyer damages the former client on an ongoing basis, we cannot, on our own initiative, defer the Motion for Determination of Conflict until we decide summary judgment. A client, however, can forego Rule 1.9 rights by consenting under appropriate conditions. "Disqualification from subsequent representation is for protection of former clients and can be waived by them." Comment 12 to Rule 1.9, 426 Mass. at 1346. We can therefore grant the Motion to Defer if it includes consent by Clark, given after consultation sufficient to validate it, and allowable under the Massachusetts Rules.

### III.  CONSENT

We first consider whether the Motion to Defer includes Clark's consent under Rule 1.9. In papers accompanying the motion, defendants asked us to defer this issue while tiptoeing around explicit consent or waiver:

Attorney O'Brien does not believe that in moving for summary judgment on behalf

---

**2.** While Federal courts can formulate their own rules of attorney conduct, our District has chosen to adopt those of the Commonwealth. Local Rule 83.6(4)(B) incorporates by reference "those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court, as they may be amended from time to time by said court, except as otherwise provided by specific rule of this court after consideration of comments by representatives within the Commonwealth." *Id.; see also Stern v. Supreme Judicial Court*, 16

F.Supp.2d 88, 89 (D.Mass.1998). When it adopted the Massachusetts Rules, the Supreme Judicial Court struck Rule 3:05, regulating contingent fees. *See* 426 Mass. at 1302. Rule 3:08 concerns criminal cases. *See id.* at 1302–1303. Only Rule 3:07, which comprises the Massachusetts Rules, is at issue here.

**3.** Rule 1.9 is identical to the corresponding ABA Model Rule except for paragraph (c). *See* 426 Mass. at 1346.

of his clients, he will need to take any positions which are "materially adverse" to the interest of defendant Clark, or make use of any confidential information. Defendant Clark does not foresee any such consequence resulting solely from the filing of the summary judgment motion.

All defendants have concluded that it would be preferable to defer the issues involving Mr. Clark's deposition and the issues involving Mr. O'Brien's potential conflict of interest until after the summary judgment motions have been heard and decided.

*Mem. of L. in Supp. of Mot. to Enlarge Time* at 3. Despite this apparent attempt to avoid explicit consent, Clark cannot have it both ways. We can defer consideration of Rule 1.9 if and only if Clark consents to O'Brien's continued appearance in the case. Conversely, Clark cannot ask us to defer the ethical issue without also consenting, for the time of the deferment, to O'Brien's involvement. The Motion to Defer must therefore include Clark's Rule 1.9 consent to O'Brien, limited in time until we decide summary judgment.

■ Having confronted Clark's consent, we must decide whether to accept it. Such consent is valid only if it occurs "after consultation." Rule 1.9(a), (b)(2), (c). The Massachusetts Rules define "consultation" as "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." Rule 9.1(c), 426 Mass. at 1432. Under Rule 1.9, consent "is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client." Comment 12 to Rule 1.9, 426 Mass. at 1346. We find Clark's consent effective because of his representation by, and presumed consultation with, independent attorney Perkins.

■ A client need not consult an independent attorney before giving valid consent. *See, e.g., West Virginia Canine College, Inc.*

*v. Rexroad,* 191 W.Va. 209, 212–213, 444 S.E.2d 566 (1994) (interpreting Rule 1.9 of West Virginia Rules of Professional Conduct). Instead, courts have concentrated on whether the client had sufficient information to make an informed decision about each case in which consent is alleged. *See DeBolt v. Parker,* 234 N.J.Super. 471, 480–483, 560 A.2d 1323 (1988) (under New Jersey Rules of Professional Conduct, undertaking detailed investigation of circumstances surrounding consent); *see also Florida Ins. Guar. Ass'n, Inc. v. Carey Canada, Inc.,* 749 F.Supp. 255 (S.D.Fla.1990) (under Florida Rules of Professional Conduct, invalidating client's alleged standing consent and holding that a standing consent, if allowable at all, must be exceedingly explicit). When a client retains independent counsel, however, the equation changes: courts can rely on counsel to apprize clients of their interests, and can be less concerned with the circumstances and sufficiency of the consent. *See Jacobs v. Pierce,* 208 B.R. 261, 280 (D.Mass.1997); *Fullmer v. State Farm Ins. Co.,* 514 N.W.2d 861, 864–865 (S.D.1994) (finding some indication that former client's new attorney was directed by former attorney, and that this indication militated against allowing consent).[4]

Perkins's representation of Clark decides the matter. While we cannot be strictly certain that Perkins and Clark consulted on this matter to the extent sufficient under the Rule 1.9, an inquiry in this area would go outside the design of the Massachusetts Rules. We can never be certain about the efficacy of any lawyer-client relationship. We rely on the skill and professionalism of our practicing attorneys, imposing limitations or investigating further only when we have special reason for concern. While Rule 1.9 does not mention *with whom* the client should consult, it was clearly meant to regulate and require consultation between a client and an attorney facing a potential improprie-

---

**4.** *But see International Longshoremen's Ass'n Local Union 1332 v. International Longshoremen's Ass'n,* 909 F.Supp. 287, 291–292 (E.D.Pa.1995) (under Rule 1.9 of Pennsylvania Rules of Professional Conduct, finding insufficient client's consent solely through independent attorney). *Local 1332* does not control this case. There, plaintiff's attorney consented for plaintiff after an exchange of letters between counsel; there was no evidence that any attorney involved had consulted with the client. Here, the client was clearly aware of, and concerned about, O'Brien's possible conflict.

ty or conflict. Since Perkins faces neither, we should not unduly disturb his relationship with Clark.

As a result, we need not fully address whether consent was voluntary and informed. Defendant Clark, represented by his own counsel, consented in writing in official court papers.[5] With one distinguishable exception, we find no cases where consent of a former client, represented at the time of consent by independent counsel, was held insufficient under Rule 1.9. While there might be situations in which independent representation cannot by itself validate the former client's consent, this case is not one of them. Clark was aware of the conflict, and hired Perkins to represent his interests. Perkins has done so. We find that Clark's representation by Perkins fulfills the consultation requirement of Rule 1.9.

One hurdle remains between Clark and valid consent under Rule 1.9. Clark offers not a complete waiver but consent limited in time, terminating when we decide on summary judgment. The Massachusetts Rules neither explicitly allow such limited consent, nor insist on unlimited consent. We turn to the cases for guidance and examples.

▮ Clients protected by Rule 1.9 can limit their consent to particular matters. *See, e.g., Kelly v. Brown*, 9 Vet.App. 37, 40 (1996) (under ABA Model Rule 1.9(a), accepting alleged former client's consent limited to the case at bar, and therefore declining to consider whether attorney was conflicted out); *Hasco, Inc. v. Roche*, 299 Ill.App.3d 118, ——, 233 Ill.Dec. 240, 248, 700 N.E.2d 768, 776 (1st Dist. 1998) (temporary slip op.) (under Illinois Rule of Professional Conduct 1.9, finding written waiver limited to representation in another matter and therefore inapplicable to the instant case).[6]

We can think of no policy reason to prohibit limited consent in this situation. All the parties have agreed or acquiesced to the Motion to Defer. If we did not allow limited consent and grant the motion, we would be compelled to face the Rule 1.9 issue before considering summary judgment. Instead, by deferring the issue, we may avoid it completely.

For the foregoing reasons, we find that Clark's limited consent is acceptable under Rule 1.9.

## IV.  CONCLUSION

" '[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.' " *Adoption of Erica*, 426 Mass. 55, 58, 686 N.E.2d 967 (1997) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982)). We will not impose a disqualification in the face of consent, even if limited, from the parties who might be detrimentally affected.

Accordingly, the Court grants the Motion to Defer, Docket No. 54, and denies without prejudice the Motion for Determination of Conflict, Docket No. 44.

SO ORDERED.

---

**5.** Though it hardly determines the issue, it appears that attorney Perkins, Clark's lawyer, produced the Motion to Defer and accompanying papers.

**6.** One Massachusetts case might cast doubt on the validity of a limited consent, *see Maddocks v. Ricker*, 403 Mass. 592, 531 N.E.2d 583 (1988), but we find it readily distinguishable.