LUCIANO FRANZONI, Plaintiff-Appellant, v. HART SCHAFFNER AND MARX, Defendant-Appellee.

First District (3rd Division)   No. 1—99—1232

Opinion filed March 15, 2000.

Ashman & Stein, of Chicago (Carey M. Stein and Gary D. Ashman, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Donald J. McNeil and Norma W. Zeitler, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Luciano Franzoni appeals from an order of the circuit court disqualifying Carey Stein (Stein), plaintiff's counsel, and the law firm of Ashman & Stein from representing plaintiff in his retaliatory discharge action brought against defendant Hart Schaffner & Marx (HSM) pursuant to section 4(h) of the Workers' Compensation Act (Act) (820 ILCS 305/4(h) (West 1996)). Plaintiff contends on appeal that the trial court erred in disqualifying Stein based upon Stein's prior unrelated representation of defendant and/or defendant's parent company, Hartmarx Corporation (HC).

On December 10, 1998, plaintiff filed a complaint against HSM, plaintiff's former employer and a wholly owned subsidiary of HC. Plaintiff alleged in his complaint, in pertinent part, that HSM, through its president and chief operating officer, had informed plaintiff in September 1997 that he had to retire because he was 71 years of age. Plaintiff further alleged the following: plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), HC then reassigned plaintiff from a private office in HC's corporate headquarters to a "blue-collar" position in a factory and distribution center operated by HSM; plaintiff subsequently experienced distress and discomfort due to his new working environment; HC and HSM then refused to accommodate plaintiff's disability; plaintiff filed a claim under the Act; and HSM unlawfully terminated plaintiff's employment on December 8, 1998, because HSM believed "the extent of [plaintiff's] injuries" that were the subject of plaintiff's worker's compensation claim "were not what [plaintiff] claimed them to be."

In response to plaintiff's complaint, HSM filed a motion to disqualify both Stein and Ashman & Stein. HSM claimed that Stein had, prior to representing plaintiff in the instant matter: (1) served

more than 14 years as in-house counsel with HC and its affiliates, including HSM; (2) become general counsel of HC before leaving HC's employ in 1994; (3) obtained or had access to confidential information about HSM employment policies, practices and procedures relevant to plaintiff's claims against HSM; (4) been directly involved in the drafting and revision of a royalty agreement between a HC subsidiary and plaintiff, an agreement relevant to plaintiff's employment discrimination claims; and (5) was privy to or had access to many confidential assessments of plaintiff's performance and worth to the company, information relevant to HSM's reasons for taking the employment action about which plaintiff was complaining. HSM moved to disqualify Stein from representing plaintiff pursuant to Rule 1.9(a)(1) of the Rules of Professional Conduct (134 Ill. 2d R. 1.9(a)(1)) because Stein's knowledge of confidential HSM information relevant to the instant case made his representation of plaintiff "substantially related" to his former representation of HSM. HSM further moved that Ashman & Stein be prohibited from representing plaintiff pursuant to Rule 1.10(a) of the Rules of Professional Conduct (134 Ill. 2d R. 1.10(a)).

In support of its motion to disqualify, HSM submitted the affidavit of Taras Proczko, an assistant general counsel of HC. Proczko averred that Stein had served as in-house legal counsel for HSM and the other subsidiaries and affiliates of HC since at least August 1980 and, following a series of promotions by HC, Stein had reached the upper echelon of HC's management as executive vice president, chief administrative officer, secretary, and general counsel. Proczko further averred that Stein, as general counsel of HC until his employment with HC ended in April 1994, had been HC's chief legal officer responsible for all legal matters for HC and its subsidiaries and affiliates, including HSM.

Additionally, Proczko averred that during Stein's employment with HC, and in his capacity as general counsel and head of HC's legal department, Stein had provided legal counsel to HC and its subsidiaries in more than 580 employment-related matters. Of the 580 employment-related matters, more than 431 were claims of some type of employment-related discrimination by a HC subsidiary or affiliate. Stein's handling of these matters, according to Proczko, included both evaluating the claims and advising and consulting with management concerning the claims' strengths and weaknesses, the appropriate litigation strategies, and/or the settlement options. In several "crucial" cases, Stein had assumed the role of HC's defense "lead counsel."

Proczko also averred that Stein had become privy to the information of HC and its affiliates, including their secrets and confidences, in the course of his providing legal representation in the employment-

related matters. Those secrets and confidences included employer-employee relationships as well as the policies, procedures, and practices of HC and its affiliates relating to their employees. According to Proczko, Stein, as general counsel, had formulated and implemented HC's employment policies and practices, and those policies and practices are "still in place today at HC and its affiliates."

Proczko further averred that employment matters with which Stein had been "intimately involved" included those relating to plaintiff. In 1989, a HC subsidiary had negotiated and entered into a royalty agreement with plaintiff relating to plaintiff's use of his name in the marketing of certain products. Stein had reviewed, revised, and drafted significant portions of the agreement; corresponded directly with plaintiff about it; discussed its terms and conditions with plaintiff's legal counsel; and advised various HC executives about it. Consequently, Stein was privy to or had access to many "confidential assessments" of plaintiff's performance and worth to the company, including HC executive's "subjective evaluation" of plaintiff's talents, skills, productivity, weaknesses, and value to HC. In late 1991, plaintiff had negotiated an amendment to the agreement, and Stein had assigned the work on the amendment, subject to Stein's supervision and control, to Proczko. Proczko had, subsequently, kept Stein advised and "fully apprised and informed" of the developments in the matter, including the status and substance of the negotiations and the ultimate amendment of the agreement.

Proczko also averred that HSM was aware that Stein had undertaken to represent plaintiff in the case at bar and that HSM, neither in the past nor in the present, had consented to such "adverse representation" by Stein.

Subsequent to numerous pleadings filed by both parties, plaintiff stated in a surreply to HSM's motion to disqualify that Ashman & Stein had last represented HC, or one or more of its subsidiaries, in May 1995, two years before the occurrence of the first event alleged by plaintiff in his complaint. During arguments before the trial court, the following colloquy occurred:

"MR. STEIN: [I] brought numerous exhibits, one of which I would like to hand to you, which we've marked Defendant's Exhibit 6. There are five exhibits that we've already introduced.

* * *

THE COURT: Show them to counsel before you show them to the Court.

MR. McNEIL [counsel for HSM]: Yes, he has it in front of him. And what this is [is] a bill of July 18, 1996, from Ashman Stein regarding their representation of one of the Hart Marx [sic] subsidiaries ***.

THE COURT: How did you get these?

MR. McNEIL: From our firm, these are Mr. Stein's bills to our client. We also brought \*\*\* other bills from Ashman & Stein, from the time that Mr. Stein left until today, which show that in the time since he left Ashman & Stein billed Hart Schaffner & Marx or Hart Marx [sic] or its subsidiaries $800,000 for cases, including more than 20 employment related cases.

I have bills here in which Mr. Stein or other persons consulted with [management executives at HC] after he left, consulted with Kenneth Hoffman, who was the president of HSM at the time plaintiff was terminated. We have bills here that show that Mr. Stein did employment law work for the company through May of 1995 and then continued to represent IBA, which is one of the subsidiaries at issue here,[1] into 1996 and into this matter, as we've shown, represented another subsidiary through mid-1996."

Following the parties' arguments, the trial court granted HSM's motion to disqualify Stein and Ashman & Stein. This court granted plaintiff's subsequent petition for leave to appeal pursuant to Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)).

Plaintiff contends on appeal that the trial court was not "correct" in disqualifying Stein and Ashman & Stein based upon Stein's prior "unrelated" representation of HSM and/or HC because HSM failed to meet its burden of showing that the present and former representations were substantially related. In response, HSM argues that the trial court properly disqualified Stein and Ashman & Stein. HSM claims that Stein's representation of plaintiff was substantially related to Stein's prior representation of HC and HSM because Stein was privy to confidences about plaintiff's employment and about HSM's employment policies and practices that related directly to plaintiff's claims and HSM's defenses.

■ The determination of whether to disqualify an attorney rests within the sound discretion of a trial court, and a reviewing court will not disturb that determination absent an abuse of discretion. See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871 (1997). A trial court abuses its discretion when no reasonable person would have agreed with the position adopted by the trial court. See *Schwartz*, 177 Ill. 2d at 176. When the question on appeal involves a resolution of factual issues, a reviewing court will not disturb the trial court's determinations unless they are unsupported by the evidence contained in the record. See *Schwartz*, 177 Ill. 2d at 176.

■ ■ Attorney disqualification based upon representing a former

---

[1]IBA, or Intercontinental Branded Apparel, was the HC subsidiary that had employed plaintiff before plaintiff was transferred to HSM.

client is governed by Rule 1.9 of the Illinois Rules of Professional Conduct, which states, in pertinent part:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure[.]" 134 Ill. 2d R. 1.9(a)(1).

A party seeking disqualification of counsel bears the burden of proving the prior attorney-client relationship and "establishing that the present and former representations are substantially related." *Schwartz*, 177 Ill. 2d at 177-78.

■ In determining whether the two representations are substantially related, the court must make the following determinations under a three-part inquiry announced in *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255-56 (7th Cir. 1983), and adopted by *Schwartz*: (1) a factual reconstruction of the scope of the former representation; (2) whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) whether the information is relevant to the issues raised in the litigation pending against the former client. See *Schwartz*, 177 Ill. 2d at 178; *Hasco, Inc. v. Roche*, 299 Ill. App. 3d 118, 127, 700 N.E.2d 768 (1998). A reviewing court must pay deference at each level of inquiry to the trial court's determinations. See *Schwartz*, 177 Ill. 2d at 178.

■ In the case at bar, HSM submitted the affidavit of Taras Proczko to sustain its burden of proving that Stein had had a prior attorney-client relationship with HSM and to establish that the matters involved in Stein's present representation of plaintiff and Stein's former representation of HSM were substantially related. Plaintiff did not submit any counteraffidavit, sworn testimony, or any other evidence refuting Proczko's affidavit. For the first time on appeal, however, plaintiff attacks Proczko's credibility and claims that Proczko lacked personal knowledge about Stein's activities. Plaintiff's failure to object specifically to Proczko's credibility in the trial court constitutes a waiver of this issue on appeal. See *In re D.L.B.*, 102 Ill. App. 3d 75, 77-78, 429 N.E.2d 615 (1981) (and cases cited therein).

■ Based upon our review of the record on appeal, we find that the substantial relationship inquiry announced in *LaSalle* was fully presented and applied in this case. As to the first prong of the *LaSalle* inquiry, the record sufficiently establishes a factual reconstruction concerning the scope of Stein's prior representation of HSM. Proczko averred in his affidavit that Stein had served as in-house legal counsel

for HSM and other subsidiaries and affiliates of HC from August 1980 until April 1994. Proczko further averred that Stein had been promoted as HC's chief legal officer responsible for all legal matters for HC and its subsidiaries and affiliates, including HSM, until his employment with HC ended. Proczko averred that Stein had provided legal counsel to HC and its subsidiaries in hundreds of employment-related matters, including claims of some type of employment-related discrimination by a HC subsidiary or affiliate. According to Proczko, Stein had become privy to the secrets and confidences of HC and its affiliates, and this confidential information included employer-employee relationships as well as the policies, procedures, and practices of HC and its affiliates relating to their employees. Stein had also acquired knowledge about specific employment claims brought by employees and former employees of HC and its affiliates and the approaches and strategies made by HC and its affiliates to those claims. We find this evidence sufficient for the trial court to have concluded that Stein had previously represented HSM and that the scope of Stein's previous representation of HSM involved extensive confidential employment-related matters.

As to the second prong of the *LaSalle* inquiry, this court finds it reasonable to infer, based upon the evidence presented to the trial court, that confidential information about HSM's employment policies and practices relating directly to the claims made by plaintiff is known by Stein. In fact, the record contains uncontroverted evidence that Stein is privy to client confidences relevant to plaintiff's allegations. At the hearing on HSM's motion to disqualify, the following colloquy occurred in which Stein admitted his involvement in setting employment policies and counseling HSM decision makers regarding those policies:

"THE COURT: Is it true here, as counsel has argued, that in your position as general counsel and counsel for Hart Schaffner & Marx that you were privy to and involved in the policy making of their employment practices?

MR. STEIN: Absolutely.

THE COURT: And so you know some of these people who may be witnesses or who were involved in management decisions in this case were acting pursuant to your policies or you had previously advised them on how to act? That's all true?

MR. STEIN: Yes. I don't know if they're the same as are involved in this case; but it is absolutely true that while I was there, obviously as general counsel of Hart Marx [*sic*], sure. And we did our litigation in-house. And yes, I represented Hart Marx [*sic*] to the best of my ability. Good enough, I guess, so that they hired me after I left. And we did, in fact, counsel management."

The above concessions lead to our conclusion that Stein is privy to the manner in which HC and its subsidiaries make employment decisions like those at issue here and the respective roles of HC and subsidiary executives and human resource professionals in such decisions. Moreover, the appellate record contains a letter Stein had sent to HC's general counsel, Frederick Wohlschlaeger, in which Stein questions the authorship of the termination letter addressed to plaintiff and signed by HSM's senior vice president of human resources and administration, Ronnie Robinson. In pertinent part, Stein states in this letter:

> "We recently learned that our client *** has been terminated from Hart Schaffner and Marx in connection with his filing of a workers' compensation claim against that company. It is our further understanding that he received a letter from your Vice President of Human Resources which we presently believe was written by either you or one of your staff attorneys."

Based upon this letter, and given the role Stein played in hundreds of employment cases and his admission that he assumed "ultimate responsibility" for human resources at HC and its affiliates, we find it reasonable to infer that Stein is aware of the chain of command concerning termination decisions and the extent to which senior executives and human resource executives are aware of the details of workers' compensation claims.

Moreover, the evidence reveals that HSM employment matters with which Stein had been involved included those relating to plaintiff directly. Proczko averred in his affidavit that Stein had reviewed, revised, and drafted significant portions of the royalty agreement executed between plaintiff and a HC subsidiary. Subsequently, Stein had discussed the agreement's terms and conditions not only with plaintiff personally but also with various HC executives. Thus, we further find it reasonable to infer that Stein is privy to, or had access to, confidential assessments of plaintiff's performance with, and worth to, HSM.

We briefly note that HSM claimed before the trial court that the agreement and the role it had played in plaintiff's relationship with HC and its subsidiaries related directly to the relevancy of HSM's defense in the present action. Plaintiff asserted, as he does on appeal, that the royalty agreement was "distinct and apart" from plaintiff's employment. Contrary to plaintiff's assertion, the fact that plaintiff had rights under the agreement that were independent of his employment rights does not undercut HSM's position that the agreement between plaintiff and his employers goes to HSM's defense in this matter and must be understood to evaluate the legitimacy of the employment acts HC and its subsidiaries had taken in 1997 and 1998.

Plaintiff asserts that he is making a simple claim about events that occurred between October and December of 1998. This assertion is meritless. Plaintiff ignores the complaint Stein drafted, which pleads earlier acts of alleged discrimination and retaliation: acts that Stein apparently believed, and HSM agrees, were relevant to plaintiff's claims.

Contrary to plaintiff's argument, the fact that Stein left HC before the present action does not make the confidential information to which Stein is privy less relevant to this lawsuit. See *Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 32 (E.D.N.Y. 1996). In fact, Stein admitted to the trial court that the HC executives who might testify at trial are the same executives with whom Stein had consulted when he was HC's general counsel. Moreover, Proczko averred in his affidavit that these executives' respective roles in decisions like those made as to plaintiff and the policies and procedures applicable to such decisions are the same today as when Stein was general counsel. In noting the evidence before it, the trial court stated:

> "[W]hen you're general counsel and you're involved in the policy making decisions \*\*\* and those policies then carry into the future \*\*\* [and] subsequently, a lawsuit is involved in the application of those policies \*\*\* [and] you represent the plaintiff—I think then you might have a conflict for a long time."

The trial court did not abuse its discretion in finding that the duration between the representations did not negate the inference that confidential information had been imparted to Stein. The trial court's finding is confirmed by the following unrefuted and dispositive facts: the persons who had made the decisions of which plaintiff now complains were the same persons that Stein had advised about similar decisions while he was HC's general counsel; Stein's former advisees were applying employment policies and practices for which Stein had been responsible; and those advisees applied those policies and practices to an employee whose relationship with HC and HSM Stein had helped to shape.

Thus, the last inquiry announced by *LaSalle* regarding whether the confidential information imparted and known by Stein would be relevant to his present representation of plaintiff has been answered. Stein is privy to client confidences sufficient to establish a substantial relationship between his representation of HSM and his representation of plaintiff. We note that, contrary to plaintiff's assertion, HSM was not required to point to or reveal particular pieces of confidential information about what Stein knows and how that information relates to plaintiff's present claims. "Once a substantial relationship is found between the prior and present representations, it is irrebuttably

presumed that confidential information was disclosed in the earlier representation." *Herbes v. Graham*, 180 Ill. App. 3d 692, 700, 536 N.E.2d 164 (1989); see also *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 990, 619 N.E.2d 1282 (1993). Stein's involvement in defending hundreds of discrimination claims against HC and its subsidiaries and in setting the companies' human resources policies is sufficient to compel disqualification here. As stated in *Ullrich v. Hearst Corp.*, 809 F. Supp. 229 (S.D.N.Y. 1992): "For the court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule." *Ullrich*, 809 F. Supp. at 233, citing *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953).

In the case at bar, we must presume that Stein's considerable involvement in employment-related matters exposed him to confidential HC policies and practices regarding the following issues raised in plaintiff's complaint: treatment of older employees; treatment of employees who file discrimination or workers' compensation claims; accommodation of employees' disabilities; and processing of workers' compensation claims, particularly the communication of details regarding such claims to company executives and managers. In summary, contrary to plaintiff's assertion, we find that HSM met its burden of showing that the present and former representations are substantially related.

We briefly note that plaintiff's assertion that the trial court disregarded the "substantial relationship test" and applied its own "new" test based upon its own personal experience and belief is meritless. Plaintiff relies upon the following trial court comments made to Stein:

> "I know how closely general counsel follow these employment cases, because the decisions they make on one case have repercussions on all of the employees in the corporation and can set policy and tone and all kinds of other factors.
>
> *** I'm going to grant the motion to disqualify you on this case, because I think your involvement as general counsel is, you know, in the areas that are clearly involved in this case. And since you did set a policy and were involved, as counsel is representing here, in litigation after you left as general counsel, that you really would be improper to represent the plaintiff against the company you previously were general counsel for and issues that are the same as those you worked for the defendant on."

Reading the above-quoted comments in context, as this court must, the record shows that the comments followed the trial court's agreement with defense counsel that the matters involved in Stein's prior and present representations are "substantially related."

We find that the trial court did not abuse its discretion in disqualifying Stein. Accordingly, it necessarily follows that the trial court did not abuse its discretion in disqualifying Ashman & Stein. Rule 1.10(a) of the Illinois Rules of Professional Conduct provides: "No lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by Rule[ ] *** 1.9 ***." 134 Ill. 2d R. 1.10(a). Pursuant to Rule 1.10(a), the trial court properly prohibited Ashman & Stein from representing plaintiff.

■ We briefly note that plaintiff's argument that the trial court should not have "overruled" the decision previously rendered by the Attorney Registration and Disciplinary Commission (ARDC) is meritless. According to the record on appeal, HC had filed a complaint against Stein with the ARDC, alleging that Stein had "switched sides on matters pertaining to plaintiff." Subsequently, the ARDC informed Stein that it had concluded its consideration of the matter and determined that it would not proceed any further. Plaintiff cites no authority for his assertion that the trial court was bound by an ARDC investigator's decision not to proceed. Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)) admonishes appellants that argument in an appellant's brief shall include citation of the authorities relied upon. This court will not research and argue points an appellant seeks to raise (see *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 311, 678 N.E.2d 374 (1997)) because we are entitled to the authority for such argument (see *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26, 441 N.E.2d 360 (1982)). Accordingly, plaintiff has waived this argument. See *Vernon Hills*, 287 Ill. App. 3d at 311; *Pecora*, 109 Ill. App. 3d at 826.

■ Lastly, subsequent to the filing of this appeal, the parties filed two motions that we took for consideration with the case. HSM moved to strike portions of plaintiff's reply brief that refer to facts not of record and contain misleading and irrelevant arguments. We grant HSM's motion and strike those portions of plaintiff's reply brief specified by HSM pursuant to Supreme Court Rule 341(g), which requires that a reply brief "shall be confined strictly to replying to arguments presented in the brief of the appellee." 145 Ill. 2d R. 341(g). With respect to plaintiff's motion to respond to HSM's motion to strike portions of plaintiff's reply brief, we deny the motion as untimely because plaintiff filed the motion one day beyond the deadline prescribed by Supreme Court Rule 361(b)(2) (134 Ill. 2d R. 361(b)(2)).

For the reasons stated, we affirm the circuit court's order disqualifying Carey Stein and Ashman & Stein.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.