SIXTH DIVISION

                                November 7, 2003

No. 1-02-3381

MARGARET GAGLIARDO, Individually, and as )  Appeal from the

Mother of Michael E. Gagliardo, a Minor, )  Circuit Court of

and Catherine C. Gagliardo, a Minor, )  Cook County.

Plaintiff-Appellee, ) 

)

v. )  No. 02 CH 13854

)

PAULETTE CAFFREY, a/k/a Paulette )  Honorable

Gagliardo, f/k/a Paulette Carioto, 
 )  John K. Madden,

Individually and as: 1. Executor of the Estate
 )   Judge Presiding.

of Michael F. Gagliardo, Deceased; 2. Trustee of
 ) 

the Michael F. Gagliardo Revocable Trust; )

3. Trustee of the Michael Gagliardo 1990 )

Special Trust; 4. General Partner of 829 Troy )

partnership, f/k/a 829 L.L.C., an Illinois 
 )

partnership; 5. General Partner of Custom 730 
 )

North Albany partnership, f/k/a Custom 730 
 )

North Albany L.L.C., an Illinois partnership; )

6. General Partner of World Cuisine partnership, 
 )

f/k/a World Cuisine L.L.C., Illinois partnership; ) 

7. President and Director of Eagle Packing )

Company, an Illinois corporation; 8. President ) 

and Director of Columbus Transportation Inc., )

an Illinois corporation; and 9. President and )

Director of CFC, Inc., d/b/a Columbus Foods )

Company, an Illinois corporation, )

Defendant-Appellant. ) 

JUSTICE SMITH delivered the opinion of the court:

This case involves an appeal from the grant of a motion to disqualify counsel (see 166 Ill. 2d R. 306(a)(7)) in an action for equitable relief in matters relating to the estate of decedent Michael F. Gagliardo.

INTRODUCTION

Upon Michael's death in May 2001, his sister, defendant Paulette Caffrey, became the sole trustee of a revocable trust that was the sole beneficiary of Michael's estate.  Paulette was also appointed independent executor of Michael's estate. Michael's wife, plaintiff Margaret Gagliardo, and their two minor children, plaintiffs Michael E. Gagliardo and Catherine C. Gagliardo (the children), are the sole beneficiaries of the revocable trust.
(footnote: 1)
 After certain actions by Paulette, Margaret brought the underlying action for injunction, removal of trustee, accounting, and other equitable relief, naming Paulette in various capacities including as trustee, as executor, and individually.  Paulette was represented in her individual capacity by attorney Christopher Matern.  Margaret filed a motion to disqualify counsel, based on Matern's representation of Michael's estate.  The circuit court granted the motion and disqualified Matern from representing Paulette individually.  

Pursuant to Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)), Paulette petitioned this court for leave to appeal the disqualification, which was allowed.  On appeal, Paulette contends the court improperly disqualified Matern because Margaret failed to establish either the existence of an attorney-client relationship between herself and Matern, or that such representation was substantially related to Matern's representation of Paulette individually.  For the reasons that follow, we affirm the order disqualifying counsel.

BACKGROUND

Michael F. Gagliardo Estate

The following are undisputed facts concerning the underlying action, which involves Michael's complex estate.

Michael and Paulette worked for and owned equal interests in various Gagliardo family businesses.  Of the numerous family businesses, the main one is a cooking oil packaging company, CFC, Inc., d/b/a Columbus Foods Company (CFC).  Other businesses include related operating companies and real estate concerns.  After Michael's death, Paulette has acted as president of CFC.

Michael and Paulette each controlled about one half (47.5%) of CFC, for a total of 95% between them, while their mother, Connie Gagliardo, controls 5% of CFC.  Both Michael's and Paulette's 47.5% shares of CFC were divided again into two nearly equal shares, so that both Michael and Paulette would control approximately two quarter-shares of CFC each: a 24.5% share was held in a revocable trust and a 23% share was held in a special trust.

Michael and Paulette had complimentary estate plans.  Both of them were trustees of their own revocable trusts (holding 24.5% of CFC), with the other named as successor trustee; they were also trustees of the other's special trust (holding 23% of CFC).  Upon Michael's death, Paulette became trustee of Michael's revocable trust, whose beneficiaries are Margaret and the children; Paulette also continued as trustee of Michael's special trust, whose beneficiaries are the children.    

Michael died in an accident while participating in an  automobile race in Toronto, Ontario.  The car Michael was driving was owned or leased by CFC.  According to Margaret: after the accident, she and Paulette, on behalf of CFC, made an agreement (investigation agreement) to hire attorneys to investigate a potential wrongful death claim; according to their agreement, CFC would pay for the investigation and be reimbursed its costs in the event of a recovery; and CFC in fact did pay investigation costs from mid-2001 until May 2002.

Attorney Matern wrote a letter at Paulette's request to respond to a June 26, 2002, letter from one of the investigating attorneys.  In the letter, Matern identified himself as counsel for both Paulette and the estate: "I represent Paulette Gagliardo personally and I am also special counsel to the Estate of Michael F. Gagliardo."  The letter referenced a meeting the following day, which Matern, on the behalf of "my client the Estate," authorized that attorney to attend.  It also informed him that "neither my client the Estate nor Paulette" would authorize any further investigation expenditure. 

In July 2002, Matern wrote a second letter to the same attorney in which he referred to correspondence from another investigating law firm that sought instruction regarding a Canadian inquest into Michael's death.  In that letter, Matern stated that his firm represented Paulette in her capacity as executor of the estate.

Chancery Action

The underlying action began with Margaret's July 30, 2002, filing of the verified complaint.  The complaint centers upon Paulette's alleged improper "attempt to purchase for herself a substantial portion of the Gagliardo family businesses" from the estate and her further attempt to force the sale at an "artificially low price."  The allegations are based upon a May 2002 letter drafted by Steven Wolf, one of Matern's partners (in the firm Wolf, Moskowitz, Holland & Matern), announcing Paulette's intent to purchase interests in the various family businesses from the estate.  In the complaint, Margaret alleges that Paulette breached her fiduciary duty as trustee in numerous ways; the proposed transactions between the estate and Paulette demonstrate a serious conflict of interest between Paulette's individual interests and her interests as trustee or executor; and the appraised values offered by Paulette for the business interests were improperly calculated and grossly inaccurate.  The complaint names Paulette as a defendant also in her capacity as president of CFC.

The same day, Margaret also filed an "emergency motion for temporary restraining order and preliminary injunction and motion for appointment of an interim trustee," which was based on the same allegations as the complaint and sought to prohibit Paulette from selling any estate assets.

On August 14, 2002, Margaret filed a motion to disqualify Matern and his law firm from representing Paulette individually.  The motion was based upon Rules 1.7 and 1.9 of the Illinois Rules of Professional Conduct prohibiting an attorney from representing one client whose interests are adverse to another client or those of a former client.  See 134 Ill. 2d Rs. 1.7, 1.9.  Issues raised on appeal relate to disqualification under Rule 1.9 only.  See 134 Ill. 2d R. 1.9.

In the motion, Margaret alleged that Matern currently represented the estate as well as Paulette individually and he had previously represented CFC and other Gagliardo family businesses.  Margaret alleged that Matern advised Paulette to "essentially breach" the investigation agreement to Paulette's benefit and cause the estate to incur great, unnecessary expenses.  Margaret supported the motion with copies of the two letters from Matern to the investigating attorney and her own affidavit. 

The following day, Matern filed an appearance for Paulette in her individual capacity.  Another attorney subsequently filed an appearance for Paulette as executor of Michael's estate.

Matern responded to the motion to disqualify, denying that he currently represented the estate or ever had an attorney-client relationship with Margaret.  In the response, Matern admitted that he represented the estate for a limited time and summarized various duties he performed during that representation.  In addition to drafting the two letters to the investigating attorney, Matern also evaluated "the appropriateness of the bills" from the investigating law firm, determined "whether and to what extent the Estate should pay the costs and attorneys' fees," met with the investigating attorney, and discussed further proceedings with his partner.

Matern supported his response with his own affidavit, in which he characterized his representation of the estate as limited.  Matern stated that he reviewed bills from and sent correspondence to the investigating law firm on the estate's behalf and he attended a meeting with the investigating attorney.  Matern further admitted that his partner "had three time entries in the first week of August [2002] on behalf of the Estate," but denied that his law firm acted on Paulette's behalf "in her capacity as executor of the estate" since August 7, 2002.

Following a hearing, the trial court entered an order on October 11, 2002, granting Margaret's motion.  Paulette timely filed a petition for leave to appeal the order pursuant to Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)), which this court allowed. 

DISCUSSION

Standard of Review

The grant of a motion to disqualify counsel is within the sound discretion of the trial court and such decision will not be disturbed on review absent an abuse of discretion.  
Schwartz v. Cortelloni
, 177 Ill. 2d 166, 176, 685 N.E.2d 871 (1997); 
Franzoni v. Hart Schaffner & Marx
, 312 Ill. App. 3d 394, 399, 726 N.E.2d 719 (2000).  An abuse of discretion occurs where no reasonable person would agree with the position taken by the trial court.  
Schwartz
, 177 Ill. 2d at 176.

Paulette acknowledges the abuse of discretion standard applied by our supreme court in 
Schwartz
 but asserts that it is unclear whether such standard applies in the instant case. Rather, Paulette urges us to review this issue 
de novo
 because the trial court considered only affidavits and other documentary evidence when it ruled on the motion to disqualify counsel.  Paulette relies primarily upon one Seventh Circuit case, 
Freeman v. Chicago Musical Instrument Co.
, 689 F.2d 715 (7th Cir. 1982), which she admits is not controlling.  Specifically, she cites the following from 
Freeman
:

"Preliminarily, it is important to note the limits of the scope of review by which we are guided.  All evidence in the case at bar comes via affidavits.  The district court neither held an evidentiary hearing on the disqualification motion nor did it make findings of fact to which we must defer.  Under similar circumstances, we have stated and we now reaffirm that district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms."  
Freeman
, 689 F.2d at 721.

Paulette asserts the lack of "oral testimony requiring any credibility determinations" at the hearing on the motion to disqualify Matern amounts to a "procedural posture" of this case similar to that in 
Freeman
.  Paulette concludes that 
de novo
 review would be appropriate here because the trial court allegedly was in no better position than this court would be to apply the law in ruling on the motion.  See 
Freeman
, 689 F.2d at 721.

However, this court has previously considered and rejected this exact argument.  Where the plaintiffs in an earlier disqualification case also sought a less deferential standard of review and relied upon the very language from 
Freeman
 cited by Paulette, this court stated, "[t]he above-quoted language [from 
Freeman
] *** does not stand for the proposition *** that the standard of review is different because the evidence was presented by way of affidavit."  
Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.
, 116 Ill. App. 3d 1043, 1054, 452 N.E.2d 804 (1983).  In rejecting the argument, this court noted that abuse of discretion remained the standard of review applied by the Seventh Circuit in cases where all evidence was presented through affidavits.  
Skokie Gold Standard Liquors, Inc.
, 116 Ill. App. 3d at 1054, citing 
LaSalle National Bank v. County of Lake
, 703 F.2d 252 (7th Cir. 1983).  

Moreover, the trial court necessarily considered questions about the scope of Matern's representation of the estate and the potential detriment to the estate from Matern's representation of Paulette when it ruled on the motion.  Despite Paulette's attempt to cast the issue before us as a question of law, 
factual determinations were necessarily made in resolving such questions.  Therefore, we decline Paulette's invitation to do otherwise and apply an abuse of discretion standard on review.  See 
Schwartz
, 177 Ill. 2d at 176.

Disqualification of Counsel

Disqualification of counsel based on former representation is governed by Rule 1.9 of the Illinois Rules of Professional Conduct.  134 Ill. 2d R. 1.9.  Specifically, the rule prohibits an attorney who has formerly represented a client in a matter from later representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure."  134 Ill. 2d R. 1.9(a)(1).

The party seeking disqualification first must prove the existence of the former attorney-client relationship.  
Franzoni
, 312 Ill. App. 3d at 400.  That party must then establish that the former and present representations are substantially related.  
Schwartz
, 177 Ill. 2d at 177-78; 
Franzoni
, 312 Ill. App. 3d at 400.

To make a determination concerning the alleged substantial relationship between the former and present representations, the trial court conducts a three-part inquiry: (1) the court first makes a factual reconstruction of the scope of the former representation; (2) the court next determines whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) the court considers whether the information is relevant to the issues raised in the litigation pending against the former client.  
Schwartz
, 177 Ill. 2d at 178 (adopting three-part test set forth in 
LaSalle National Bank
, 703 F.2d at 256).  In each of the three levels of inquiry, deference must be given to the trial court's determinations.  
Schwartz
, 177 Ill. 2d at 178.  

In the instant case, the court's disqualification order did not set forth the court's reasoning, making implicit the findings of the existence of an attorney-client relationship and a substantial relationship between the prior representation of the estate and the representation of Paulette individually.  Although Paulette characterizes the attorney-client relationship as between Matern and her (Paulette) 
as executor of the estate
 rather than the estate itself, our review of the record establishes that Matern in fact represented the estate.

In his affidavit, Matern admitted such relationship, which he detailed under the heading "THE LIMITED NATURE OF MY REPRESENTATION OF THE ESTATE."  Matern stated that, at some time after the end of April 2002, he became aware of an investigation into Michael's death being conducted by another law firm which purported to represent the estate.  Matern admitted that, on the estate's behalf, he reviewed the bills from that law firm, wrote two letters to that firm and attended a meeting with an attorney from that firm.  

In the affidavit, Matern also referred to his representation of Paulette as executor in the alternative ("My representation of the Estate, or Paulette in her capacity as executor of the Estate"), but he made additional statements further admitting he represented the estate: "[M]y representation of the Estate was focused on *** [the] demand for fees for itself of several attorneys in Canada who were also purportedly working on the Investigation."  Moreover, in at least the first of the two letters Matern wrote on the estate's behalf, he repeatedly referred to the estate, as distinct from Paulette, as his client.  Although Matern characterized his representation of the estate as having been of a "limited nature," for at least several months in 2002, an attorney-client relationship existed between Matern and the estate.  

While admitting he was an attorney for the estate, however, Matern denied he ever had an attorney-client relationship with Margaret.  Given Matern's admitted relationship with the estate, we must determine what relationship, then, existed between Matern as estate attorney and Margaret, as estate beneficiary.  

Paulette contends that Margaret failed to establish the existence of an attorney-client relationship, arguing that Margaret's status as an estate beneficiary did not make her (Margaret) a client of Matern.  Paulette relies primarily upon two cases, 
In re Estate of Vail
, 309 Ill. App. 3d 435, 722 N.E.2d 248 (1999), and 
In re Estate of Kirk
, 
292 Ill. App. 3d 914, 686 N.E.2d 1246 (1997), for the proposition that an attorney for the executor of an estate does not have an attorney-client relationship with a beneficiary of the estate.  She further argues that an attorney for the executor is precluded from an attorney-client relationship with the beneficiaries because there is inherent adversity between the executor and the beneficiaries.  Paulette also admits that Margaret would have the right to bring a legal malpractice action against Matern based on her status, as estate beneficiary, as an intended third-party beneficiary of Matern's legal counsel.  She argues that, nonetheless, such right does not create an attorney-client relationship between Margaret and Matern.

Paulette correctly notes that this court has held, in certain circumstances, that the attorney for the executor of an estate does not have an attorney-client relationship with the estate beneficiaries.  
In re Vail
, 309 Ill. App. 3d at 441; 
In re Kirk
, 
292 Ill. App. 3d at 919.  Those circumstances, however, involved challenges to the estate by the beneficiaries.

In 
Kirk
, the estate heirs sought to remove the attorney for the bank-estate executor (which was also guardian of the estate of the decedent's minor children) based on an alleged violation of fiduciary duty to the beneficiaries by representing the bank in actions concerning the guardianship. 
There, the court affirmed the denial of disqualification and noted that the attorney's client was the bank-executor, and the executor and its attorney had the sole obligation of upholding the decedent's wishes as expressed in the will.  
The court "decline[d] to hold that a conflict of interest arises between an individual heir and the executor's attorney merely because the heir's wishes are contrary to the terms of the decedent's will."  
In re Kirk
, 
292 Ill. App. 3d at 922.

The court articulated the principle that the beneficiaries of an estate are intended to benefit from the estate and are owed a fiduciary duty by the executor to act with due care to protect their interests.  
In re Kirk
, 
292 Ill. App. 3d at 919.  They are not, however, owed allegiance by the estate attorney, who does not have an attorney-client relationship with the beneficiaries and whose "first and only allegiance" is to the estate in such adversarial situations.  
In re Kirk
, 
292 Ill. App. 3d at 919.

In 
Vail
, a residuary legatee was joined by other heirs in a contest of the will and trusts; the bank-estate executor, which was also trustee of the trusts, was represented by the same law firm as executor and trustee in the will and trust contests.  
In re Vail
, 309 Ill. App. 3d at 438, 441.  There, the court held that the estate has a duty to defend a will contest and may employ an attorney for that purpose.  
In re Vail
, 309 Ill. App. 3d at 441.  The court acknowledged that the estate's attorney must act with due care and protect the beneficiaries' interests
, but held 
that, in such adversarial situation, the attorney for the executor does not have an attorney-client relationship with the beneficiaries.  
In re Vail
, 309 Ill. App. 3d at 441. 

Here, however, the adversarial situation does not involve a defense of Michael's estate from a beneficiary's challenge. Margaret, the sole beneficiary, does not contest the terms of either Michael's will or revocable trust.  Thus, the situation in the case at bar is unlike that in 
Kirk
 or 
Vail
, because there is no challenge here to the will or trusts, or actions taken to comply with Michael's testamentary wishes.  In those cases, the interests of the executor, or the estate, diverged from those of at least some beneficiaries.  Here, however, Margaret is the sole party intended to benefit from the estate.  Therefore, Margaret's interests are, for all practical purposes, coextensive with those of the estate: her interests are aligned with the estate, not against it. 

The adversarial situation here arose instead from a divergence of the estate's interests, which cannot be delineated from those of the sole beneficiary, and the interests of one of the Gagliardo family businesses, namely, CFC.  In fact, at least as far as the investigation costs are concerned, the interests of the estate and CFC are in direct opposition:  if the estate rather than CFC was caused to bear those costs, CFC would benefit at the estate's detriment.  Because Paulette has a substantial interest in CFC, she too would benefit by shifting the investigation costs to the estate.  Therefore, the conflict alleged is between the estate and the executor, whose individual interests would benefit from an action detrimental to the estate.

Again, it is established that Matern acted as attorney for the estate.  Even if he acted in such capacity for a limited time, Matern owed a fiduciary duty to the estate and its sole beneficiary, Margaret.  See 
In re Estate of Halas
, 159 Ill. App. 3d 818, 825, 512 N.E.2d 1276 (1987) (fiduciary relationship exists between attorney for executor and beneficiaries); but see
 
Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville
, 261 Ill. App. 3d 750, 763, 633 N.E.2d 1267 (1994) (estate attorney has no duty to beneficiary due to "potentially adversarial relationship" between estate's and beneficiary's interests).  We need not distinguish Margaret's status as estate beneficiary from that of an intended third-party beneficiary.  See, 
e.g.
, 
Pelham v. Griesheimer
 92 Ill. 2d 13, 20-21, 440 N.E.2d 96 (1982) (attorney liability extends to intended third-party beneficiaries of attorney-client relationship).  As Paulette notes in her reply brief, questions concerning alleged breaches of fiduciary duty by her or Matern are irrelevant to this appeal and will be decided by the trial court.  Here, the point is that Margaret did not challenge the estate, so there is no adversity between her interests and the estate's interests.

Because representation of the estate essentially means representation of its sole beneficiary, Margaret, under the narrow circumstances of this case, we conclude that, for the time Matern represented the estate, he represented Margaret.  We acknowledge that, under the distinguishable circumstances discussed earlier, estate beneficiaries were held not to have an attorney-client relationship with the attorney for the executor of the estate.  See 
In re Vail
, 309 Ill. App. 3d at 441; 
In re Kirk
, 
292 Ill. App. 3d at 919.  There, the attorneys defended the estate from beneficiaries, whereas here, Matern represented the estate in matters concerning payment and evaluation of investigation costs.  See, 
e.g.
, 
Jewish Hospital
, 261 Ill. App. 3d at 761 (representation involving nonadversarial matters makes third-party beneficiary status easier to establish).  Thus, in such representation, Matern in effect represented Margaret.

Again, the conflict alleged here in the chancery action is not between a beneficiary and the estate but, rather, between the executor Paulette, whose business interests in CFC are divergent from the estate's interest, and the estate and its sole beneficiary, Margaret.  Because Matern owed a fiduciary duty to the estate, he could not, without conflict, represent Paulette, with her substantial interest in CFC.  Under these particular circumstances, then, we cannot say the trial court abused its discretion by implicitly finding the existence of an attorney-client relationship between Matern and the sole estate beneficiary, Margaret.

We must then consider whether the trial court properly found a substantial relationship between Matern's former representation of the estate and his representation of Paulette individually in the chancery action.  See 
Schwartz
, 177 Ill. 2d at 177-78; 
Franzoni
, 312 Ill. App. 3d at 400.  Accordingly, we first consider a factual reconstruction of the scope of the former representation.  Paulette makes much of the alleged limited nature of Matern's representation, arguing that Matern represented the estate for a little over two months and only as to the "limited issue of the appropriateness of the services provided and costs being charged" for the investigation.  However, neither the short duration nor the purportedly limited nature of the representation diminishes the fact that Matern was involved with matters crucial to the estate.

Paulette concedes that Matern reviewed the legal bills and wrote the two letters.  Moreover, at least one of Matern's partners also represented the estate.  That partner, Wolf, drafted Paulette's letter announcing her intention to purchase estate assets, yet he also represented the estate in some capacity even after Margaret filed her complaint.  Whatever the precise dates of Matern's representation of the estate were, he and his firm were intimately involved in matters that are the subject of the pending litigation.  See 
Franzoni
, 312 Ill. App. 3d at 403 (several year duration between representations did not negate inference of communication of confidential information); see also 
Schwartz
, 177 Ill. 2d at 183 (nearly 40-year gap between representations concerning unrelated matters did not justify attorney disqualification).  

Next, we consider whether it was reasonable to infer that confidential information allegedly given concerning the estate would have been given to Matern, and whether that information would be directly relevant to Matern's representation of Paulette individually.  Matern's involvement with the estate, albeit of limited duration, concerned
 the payment of legal fees for the investigation, or, in other words, financial matters.  In such capacity, it would, then, be reasonable to infer that Matern was given other information concerning estate finances in addition to the fees sought by the investigating law firm.  It would be reasonable to infer also that an attorney charged with estate finances would have an overview of the estate's value and the various assets it contained.  Paulette responds that the assets and liabilities of an estate are a matter of public record, and that facts concerning the alleged investigation agreement would be known to her in her capacity as president of CFC.  She concludes that no confidential information was communicated to Matern in his representation of the estate.

However, Margaret was not required to prove that confidential information was communicated, but merely that it could have been.  See 
Franzoni
, 312 Ill. App. 3d at 403 (party seeking disqualification not required to reveal what exact information was disclosed or how it related to present claim); 
Hasco, Inc. v. Roche
, 299 Ill. App. 3d 118, 129, 700 N.E.2d 768 (1998) (relevant question is not whether actual confidences were disclosed but "whether such confidences could be revealed, whether intentionally or inadvertently").  
Such information could reasonably include, for example, the valuations of various estate assets.  It is clear that such information would be directly relevant to Matern's representation of Paulette individually.

Moreover, given the intertwining nature of the claims and Paulette's admittedly "conflicting capacities," it is reasonable to infer that information, which was pertinent to one particular matter, would later become relevant to another, related matter.  See 
Hasco
, 299 Ill. App. 3d at 129 (nature and scope of representations "inextricably tied" where present dispute concerned mutations of same issues and parties).  Therefore, the trial court did not abuse its discretion in determining that there was a substantial relationship between Matern's former representation of the estate and his representation of Paulette in her individual capacity.

CONCLUSION

For the reasons stated, the trial court properly granted Margaret's motion to disqualify Matern from representing Paulette individually.  Accordingly, we affirm the judgment of the circuit court.

Affirmed. 

TULLY and GALLAGHER, JJ., concur.

FOOTNOTES
1: 
For purposes of this appeal, we will refer to Margaret, who is acting on the children's 

behalf, in the singular, as the sole beneficiary.