No. 2--07--0541     Filed: 12-3-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re ESTATE OF AGNES H. WRIGHT, Deceased | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County.<br><br>Nos. 06--CH--2197<br>      06--P--598 |
| (Peter J. Wright, Petitioner and Respondent-Appellant; The Northern Trust Company, as Successor Trustee of the Agnes H. Wright Trust dated December 17, 1981, as Amended and Restated, Petitioner and Respondent-Appellee; The Northern Trust Company, as Independent Executor of the Will and Estate of the Agnes H. Wright Trust dated December 17, 1981, as Amended and Restated, Respondent; Linda Lee Bordignon, Respondent; and John R. Wright, Petitioner). | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable<br>Kenneth L. Popejoy,<br>Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Peter J. Wright filed a petition for leave to appeal to this court (see 210 Ill. 2d R. 306) following the trial court's partial grant of a motion to disqualify his counsel brought by The Northern Trust Company, in its capacity as trustee of the Agnes H. Wright Trust (dated December 17, 1981, as amended and restated). Peter contends that the trial court abused its discretion in granting the motion. We disagree and therefore affirm.

There are actually three separate proceedings below that have been consolidated by the trial court. First, there is a probate action involving the estate of Agnes Wright. In the course of this action, Peter filed a petition to invalidate an amendment to a trust because of the alleged undue influence of his sister, Linda Bordignon, upon his mother, Agnes Wright. John Wright, Peter's brother, filed an independent action seeking to invalidate an amendment to the trust on the same basis. Additionally, Northern filed an action on behalf of the estate, alleging breach of contract for Peter's failure to repay a purported loan to the estate.

The amendment that was the subject of Peter's petition provided, <u>inter alia</u>, as follows:

"This first amendment to my Trust is made in order to be sure there is no misunderstanding about a One Million, Eight Hundred Thousand Dollar ($1,800,000.00) loan I made to my son, Peter, so he could buy a second home in Lake Geneva, Wisconsin. Peter negotiated the loan with my then attorney, Raymond Olson, Jr. Peter didn't like the idea of giving me a mortgage on the property. However, he did not object to the other terms of the loan. The loan agreement, which was never signed because of the mortgage language, required Peter to repay the loan in four equal annual installments of $428,003.12 including interest at 6.46% per year commencing on February 1, 2003. Peter will hopefully make each payment as he agreed. However, if he does not, I direct my trustee to treat this debt as a trust asset and either recover the unpaid balance or, if the trustee considers it advisable, offset the unpaid balance of the loan against Peter's distributive share under this Trust. Hopefully, this will not have to happen."

Raymond Olson--Agnes's attorney with regard to this transfer--is now deceased. Peter's petition states:

"On or about December 16, 2002, subject to Linda's undue influence, [Agnes] signed [a] Trust Amendment ***. For the first time since the $1,800,000 was transferred to Peter[,] *** Agnes *** purports to suddenly attempt to characterize the transfer to be a 'loan,' notwithstanding *** that less that two (2) months earlier, Agnes 'reiterated' that the $1,800,000 transfer was a gift."

Thus, one of the allegations Peter relies on in arguing that Agnes was subject to Linda's undue influence is her purported recharacterization of the transfer.

Northern, meanwhile, had alleged in its pleading that "Peter has breached the terms of his oral agreement with Agnes relating to the loan by failing to make any of the annual installments due pursuant to the terms of the Promissory Note." Northern also essentially paraphrased the above language from the amendment Peter seeks to invalidate. Peter maintains that the transfer represented a gift.

Northern moved to disqualify Peter's counsel. In the course of this dispute, Peter had retained two law firms, Cunningham, Meyer, and Verdine (Cunningham) as well as Kelly, Olson, Michod, DeHaan, and Richter (Olson). Northern sought to have both disqualified. Northern argued that Olson should be disqualified because of its prior representation of Agnes with regard to the $1,800,000 transfer. Northern further argued that Cunningham should be disqualified because "it is reasonable to assume that the Olson Firm disclosed confidential information to the Cunningham Firm relating to Olson's prior representation of Agnes." The trial court agreed with Northern's first argument, but not its second one. Accordingly, only Olson was disqualified.

The parties agree on the applicable law. Rule 1.9 of the Illinois Rules of Professional Conduct provides:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or

(2) use information relating to the representation to the disadvantage of the former client, unless:

(A) such use is permitted by Rule 1.6; or

(B) the information has become generally known." 134 Ill. 2d R. 1.9.

The supreme court has provided the following guidance for determining whether a substantial relationship exists between a current representation and a former matter, by what has come to be known as the LaSalle inquiry:

"Under the LaSalle inquiry, the court first must make a factual reconstruction of the scope of the former representation. Then, it must determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, the court must consider whether the information is relevant to the issues raised in the litigation pending against the former client." Schwartz v. Cortelloni, 177 Ill. 2d 166, 178 (1997), citing LaSalle National Bank v. County of Lake, 703 F.2d 252, 256 (7th Cir. 1983).

The party seeking disqualification bears the burden of demonstrating that the two representations in question are substantially related. Hannan v. Watt, 147 Ill. App. 3d 456, 464 (1986).

Whether disqualification is appropriate is a matter that lies within the discretion of the trial court. Schwartz, 177 Ill. 2d at 176. Hence, we will disturb such a decision only where that discretion

-4-

is abused. Schwartz, 177 Ill. 2d at 176. An abuse of discretion occurs only where no reasonable person could agree with the position taken by the trial court. Schwartz, 177 Ill. 2d at 176. Moreover, it must be remembered that, because it deprives the affected party of counsel of his or her choice, disqualification is considered a drastic remedy. SK Handtool Corp. v. Dresser Industries, Inc., 246 Ill. App. 3d 979, 989 (1993). Courts must be vigilant in ensuring that motions to disqualify are not misused as tactical weapons for the purpose of harassment. SK Handtool Corp., 246 Ill. App. 3d at 989. On the other hand, "[c]ourts have vital interests in 'protecting the attorney-client relationship, maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings.' " In re Estate of Klehm, 363 Ill. App. 3d 373, 376 (2006), quoting SK Handtool Corp., 246 Ill. App. 3d at 989. Disqualification exists to safeguard these vital interests. Klehm, 363 Ill. App. 3d at 377. Therefore, "any doubts as to the existence of a conflict should be resolved in favor of disqualification." SK Handtool Corp., 246 Ill. App. 3d at 989-90. With these principles in mind, we now turn to the substance of the parties' arguments.

To resolve this appeal, we will apply the LaSalle inquiry, as set forth by the supreme court in Schwartz, 177 Ill. 2d at 178. First, we must make a factual reconstruction of the scope of the prior representation--that is, Olson's representation of Agnes with regard to the transfer of $1,800,000 to Peter. Schwartz, 177 Ill. 2d at 178. Peter characterizes this former representation as "consultations regarding how this transfer was to take effect, including the drafting of a Promissory Note." "How this transfer was to take effect" would necessarily entail information regarding the nature of the transaction. That is, if it was a loan, the "how" would likely include things like interest and a payment schedule. If, on the other hand, it was a gift, such issues would be irrelevant. Hence, the "how" of the transaction would have been dependent to some extent on the nature of the transaction.

Furthermore, the trust amendment that Peter seeks to have invalidated contains representations relevant to the transfer of funds from Agnes to Peter, such as that Peter did not want to place a mortgage on his home but did not object to other terms of the loan. It is clear that Olson represented Agnes with regard to substantially all aspects of the transfer and that acting in such a role would entail knowing the nature of the transaction, including Agnes's intent with regard thereto.

The next step we must take under Schwartz, 177 Ill. 2d at 178, is to determine whether any confidential information "would have been given to a lawyer representing a client in those matters." The Rules of Professional Conduct prohibit an attorney from revealing a "confidence or secret of the client known to the lawyer." 210 Ill. 2d R. 1.6(a). Thus, for information to fall within the scope of the rule, it must be confidential or secret. Consequently, it is not surprising that, as Peter points out, Northern only generally identifies such information in its motion as "confidential information concerning the loan, including but not limited to, communications between Agnes and Peter regarding the loan, the purpose of the loan, and whether Agnes intended the loan to be a loan or a gift, because Olson was involved with the negotiation of its terms." Obviously, if Northern could identify information with specificity, it would not be confidential. A certain amount of generality is to be expected. Peter's contention that "Northern Trust never demonstrated any such actual confidential communications existed" imposes too high a burden.

Peter, however, argues that Northern has waived any claim to the confidentiality of communications between Agnes and Olson by filing its breach-of-contract suit, and he cites Lama v. Preskill, 353 Ill. App. 3d 300 (2004), in support. In Lama, the court held that the plaintiff waived the attorney-client privilege by alleging facts designed to invoke the discovery rule when she sued after the applicable limitations period had run. Lama, 353 Ill. App. 3d at 307. This, according to the

Lama court, allowed the defendant access to documents pertaining to a meeting between the plaintiff's attorney and one of her agents, as that could show when the plaintiff became aware of her claim. Insofar as the second prong of the inquiry under Schwartz, 177 Ill. 2d at 178, is concerned, waiver would mean that there is no confidential information to protect.

Lama provoked a well-reasoned dissent by Justice Bowman. Justice Bowman criticized the majority's reliance on Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc., 176 F.R.D. 269, 272 (N.D. Ill. 1997), which, in turn, relied on Hearn v. Rhay, 68 F.R.D. 574, 580 (E.D. Wash. 1975). Hearn has been subject to substantial criticism, notably for focusing on the need of the party seeking the information rather than the policy that the privilege serves. Lama, 353 Ill. App. 3d at 309 (Bowman, J., dissenting); see also Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter"); Pappas v. Holloway, 114 Wash. 2d 198, 207-08, 787 P.2d 30, 36 (1990); Developments in the Law--Privileged Communications, 98 Harv. L. Rev. 1450, 1640-42 (1985). Justice Bowman suggested a rule, adopted by several courts, under which waiver occurs only if "the litigant directly puts the attorney's advice at issue in the litigation." Lama, 353 Ill. App. 3d at 310 (Bowman, J., dissenting), citing Public Service Co. of New Mexico v. Lyons, 129 N.M. 487, 492, 10 P.3d 166, 170-71 (App. 2000). Such jurisdictions "limit the extent of the at-issue waiver doctrine to circumstances in which the ' "privilege-holder injects the privileged material itself into the case." ' " Lama, 353 Ill. App. 3d at 310 (Bowman, J., dissenting), quoting Aranson v. Schroeder, 140 N.H. 359, 370, 671 A.2d 1023, 1030 (1995), quoting R. Marcus, The Perils of Privilege: Waiver and the Litigator, 84 Mich. L. Rev. 1605, 1633 (1986).

Given the controversy surrounding the rule adopted in Lama, we are unwilling to give it an expansive reading and to apply it beyond its stated facts. In this case, or any contract case for that matter, the privilege would never apply where an attorney drafted a contract and the client later sued on the contract, particularly where extrinsic evidence of the parties' intent was relevant to construing the contract. Such a broad exception would quickly swallow the attorney-client privilege and frustrate the important policy considerations it exists to protect (see Waste Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d 178, 190 (1991), quoting Consolidation Coal Co. v. Bucyrus-Erie Co., 89 Ill. 2d 103, 117-18 (1982) (" 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information' ")). Accordingly, we reject Peter's contention that, by filing the contract action, Northern waived the protection of the attorney-client privilege with regard to communications between Olson and Agnes.

Thus, a reasonable person could conclude that Northern has satisfied the second prong of the Schwartz test; therefore, no abuse of discretion has occurred (Schwartz, 177 Ill. 2d at 176). This prong requires only that confidential information could have been communicated, not that such information was in fact conveyed. Gagliardo v. Caffrey, 344 Ill. App. 3d 219, 231 (2003). It is undisputed that Olson represented Agnes with regard to the transfer of $1,800,000 to Peter. This included negotiating on Agnes's behalf. It is reasonable to infer that, in the course of negotiating on her behalf, Olson could have become privy to confidential information, most notably Agnes's intent regarding the terms and nature of the transaction. Cf. Gagliardo, 344 Ill. App. 3d at 230-31 ("[Attorney] Matern's involvement with the estate, albeit of limited duration, concerned the payment of legal fees for the investigation, or, in other words, financial matters. In such capacity, it would,

then, be reasonable to infer that Matern was given other information concerning estate finances in addition to the fees sought by the investigating law firm. It would be reasonable to infer also that an attorney charged with estate finances would have an overview of the estate's value and the various assets it contained"). Moreover, Peter's argument that, as a party to the transfer, he was " 'in the circle' of communication" and therefore any communication between Olson and Agnes was not confidential with regard to him has been previously rejected. See Gagliardo, 344 Ill. App. 3d at 231.

The final step we are directed to take by Schwartz, 177 Ill. 2d at 178, is to consider whether any of the information that may have been communicated is potentially relevant to the issues raised in the action pending against the former client. Peter claims that any communications between Agnes and Olson are "irrelevant to the issues of fiduciary duty and undue influence in Peter's petition." (Emphasis omitted.) We disagree. Quite obviously, if Agnes in fact intended the transfer to be a loan, then the amendment Peter seeks to invalidate actually reflects Agnes's intent. If the amendment embodies Agnes's intent, it is less likely that it is the product of Linda's undue influence. Waters v. Waters, 222 Ill. 26, 35-36 (1906) ("It is true that where a will is charged to have been executed through undue influence, the declarations of the testator, made before its execution, are admissible by way of rebuttal to show his intention as to the disposition of his property, upon the ground that a will, made in conformity with such declarations, is more likely to have been executed without undue influence than if its terms are contrary to such declarations"). Thus, any communications between Agnes and Olson regarding the nature of the transfer (i.e., gift or loan) could be relevant to Peter's petition to invalidate the amendment to the trust. At the very least, a reasonable person could come to this conclusion, so no abuse of discretion occurred. Schwartz, 177 Ill. 2d at 176.

Hence, we hold that the application of the factors set forth in Schwartz, 177 Ill. 2d at 178, indicates that we must affirm the trial court's exercise of its discretion in this matter. Before closing, however, we will address a few additional points Peter raises.[1]

Peter argues that Klehm compels a different result. Klehm is distinguishable. Notably, in the course of ruling, the Klehm court made the following observation:

"The issues presented in counts I and II concern allegations of conversion of estate assets and whether purported transfers of KPI stock by Mrs. Klehm during the period of 1980 through 1995 constituted valid gifts or transfers. It is undisputed that neither Cappetta or Shadle nor their respective law firms represented Mrs. Klehm or the Klehm movants in connection with the purported transfers during this period." Klehm, 363 Ill. App. 3d at 383.

Interestingly, where the validity of certain gifts was at issue, the court found it significant that the attorneys who were the object of the disqualification motion were not involved in the transfers in question. In this case, conversely, Olson was involved in the transfer that is at issue. Further, the Klehm court found that "the nature and scope of [the attorneys'] former representation of the Klehm movants in the various real estate and loan transactions [did] not entail disclosure of confidential information relevant to the citation proceedings." Klehm, 363 Ill. App. 3d at 382. As we have previously explained, knowledge regarding Agnes's intent is directly relevant to Peter's petition.

---

[1]Initially, we acknowledge Peter's assertion that the detail with which he pleaded facts in his petition regarding the $1,800,000 transfer was simply for the "purpose of historical context." A reasonable person reading the petition could, however, conclude that these facts had substantive import.

Peter also contends that "[t]he 'substantial relationship' test is inapplicable when the former client has no reason to believe that information given to its counsel will not be known by or shared with counsel's current client." Initially, we note that Peter cites only an unpublished order from the federal District Court for the Northern District of Illinois. See Lanigan v. Resolution Trust Corp., No. 91--C--7216 (N.D. Ill. November 23, 1992). That case involved a motion to disqualify an attorney representing a company's former chief executive officer (CEO) in litigation with the company. The attorney had previously represented the company in various matters. The court reasoned that the substantial relationship test was inapplicable because, as CEO, the attorney's current client was privy to all significant secrets of the company. Whatever the wisdom of such a rule--it seems a reasonable one--we would be loath to extend it to parties to a contract. A CEO likely is aware of important information relating to his or her company; parties to a contract do not necessarily share information openly and, in some circumstances, many actively conceal material facts (such as the most that one is really willing to pay for something). The relationship of CEO-company is quite different from the relationship between parties to a contract. Thus, the rule upon which Peter seeks to rely is of dubious value here.

Finally, Peter contends that the trial court did not give ample weight to his interest in having counsel of his own choosing. Peter points to the trial court's statement that it believed his ability to select counsel was "not a huge issue" because there are numerous competent attorneys in the area who could handle the matter. Peter asserts that he retained Olson because of its recognized expertise in probate and trust matters. In support of this argument, Peter cites only Schwartz, 177 Ill. 2d at 178, for the proposition that "[a]ttorney disqualification is a drastic measure because it destroys the attorney-client relationship by prohibiting a party from representation by counsel of his or her

choosing." We have no quarrel with this statement as a general proposition. That case also sets forth the specific procedure by which that interest may be overridden and counsel disqualified (Schwartz, 177 Ill. 2d at 178), and it is that analysis to which this entire order has been dedicated. Peter's right to the counsel of his choice has not been lightly disregarded; rather, it has been denied because the counsel he chose had represented an adverse party in a substantially related matter.

Accordingly, we hold that the trial court's decision to disqualify Olson from representing Peter was not an abuse of discretion. The order of the circuit court of Du Page County to that effect is therefore affirmed.

Affirmed.

O'MALLEY and CALLUM, JJ., concur.